IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MICHIGAN
Southern Division

UNITED STATES OF AMERICA
*ex rel,* Christian Kreipke
     Plaintiffs,     Civil Action No.

BRINGING THIS ACTION ON BEHALF OF
THE UNITED STATES OF AMERICA

v.               Hon. Judge
                Qui Tam Action

WAYNE STATE UNIVERSITY, and  **FILED UNDER SEAL PURSUANT**
UNIVERSITY PHYSICIAN GROUP, P.C., **TO 31 U.S.C. § 3730(b)(2)**
     Defendants.     **DO NOT PLACE IN PRESS BOX**

               **DO NOT ENTER ON PACER**

## AFFIDAVIT OF DR. CHRISTIAN KREIPKE

STATE OF MICHIGAN  )
          ) ss
COUNTY OF OAKLAND )

  The undersigned, DR. CHRISTIAN KREIPKE, being first duly sworn, deposes and states as follows:

1. I have personal knowledge of the facts asserted herein, and if called to testify, can do so competently;

2. I am the Plaintiff-Relator in this action;

3. I was the principle investigator (PI) or Co-principle investigator (Co-PI) on the following grants 1) Grant Number R01NS069937-01;

4. The supply requests made in the grant proposals were inflated;

5. As an example, on a five year grant like Grant Number R01NS069937-01, we typically only required the following:

- Antibodies: range $150-$1000 per ml (~10,000 over 5 year period)

- Surgical instruments: range $100-$300 per instrument (~12,000 over 5 year period)

- Misc surgical supplies (e.g., gauze, wound clips, etc) (~10,000 over 5 year period)

- Slides: range $100-200/ 50 slides (~6,000 over 5 year period)

- In situ reagents: range $5,000-$12,000 per primer (~36,000 over 5 year period)

- Histological reagents: range $200-$2,000 per reagent (~34,000 over 5 year period)

- Misc lab supplies (e.g., glassware, solvents, culture wells, etc) (~32,000 over 5 year period)

6. Therefore, over a five year grant we required a total amount for supplies of approximately $140,000;

7. This is in direct contradiction to the inflated amounts on our grant proposal, which budgeted $98,000+indirects for the first year and $98,000+ indirects +3% inflation each subsequent year;

8. This totaled approximately $790,848, and was approximately $650,000 more than we needed;

9. This is just one example of the over inflation of grant proposals at WSU;

10. As a result of my first hand knowledge regarding the submission of fraudulently inflated grants I have personal knowledge that the federal government was defrauded as it awarded millions of dollars in grants based on inflated proposals;

11. I complained to my supervisors, and the administration, about the fraud related to grant proposals;

12. As a result of my complaints I was targeted by Defendant WSU's administration;

13. Eventually, I was terminated based on confabulated and concocted statements and data that were untrue and unfounded;

14. I was summarily terminated without being given due process or following the necessary administrative procedures;

15. In doing so, Defendant WSU attempted to impugn my reputation and standing in the research community by informing my colleagues that I was guilty of research fraud, when nothing could be further from the truth;

16. When I was terminated, Defendant WSU, in its overzealous attempt to retaliate against me, also terminated my entire staff;

17. Defendant WSU also expelled the staff from their Ph.D track programs, thereby destroying the staff's futures as well;

18. This is despite there being no evidence whatsoever that the staff engaged in any inappropriate activity.

Further, Affiant sayeth not.

Dr. Christian Kreipke

Subscribed and sworn to before me this _30th_ day of _October_, 2012.

Z:\Myfiles\G_L\Kreipke, Chris\Pleadings-draft\Aff.chris.doc

SYED HUSSAIN AKBAR
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Jan 21, 2014
ACTING IN COUNTY OF OAKLAND