# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA
ex rel. Christian Kreipke, and CHRISTIAN
KREIPKE, an individual

        Plaintiffs,                       Case No. 12-cv-14836-AC-RSW

v.                                          Hon. Avern Cohn
                                          Mag. Steven Whalen

WAYNE STATE UNIVERSITY, and
UNIVERSITY PHYSICIAN GROUP,

        Defendants.

---

## DEFENDANT WAYNE STATE UNIVERSITY'S MOTION TO DISMISS AND FOR COSTS AND ATTORNEYS FEES

Defendant Wayne State University ("WSU"), by and through its attorneys Dickinson Wright PLLC, respectfully moves pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), 8(c), and 12(b)(1) for dismissal of Plaintiff's First Amended Complaint against WSU in its entirety.

Because Plaintiff's claims are clearly frivolous, clearly vexatious and brought for purposes of harassment, WSU respectfully requests the Court to awarding WSU its actual, reasonable costs and attorneys fees, pursuant to 31

U.S.C. § 3730(d)(4), 28 U.S.C. § 2412(d), 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 11.

In support of this Motion, WSU relies upon the First Amended Complaint, and the arguments and legal authorities contained in the accompanying Brief in Support.

Pursuant to Local Rule 7.1, WSU requested Plaintiff's concurrence in the relief sought by this Motion, but Plaintiff refused to provide such concurrence.

WHEREFORE, WSU respectfully requests the Court to enter an Order dismissing Plaintiff's First Amended Complaint against WSU in its entirety, and award WSU such other relief as may be appropriate, including its costs and attorney fees incurred in defending this action.

Respectfully submitted,
DICKINSON WRIGHT PLLC

By: /s/ Kenneth J. McIntyre
    Kenneth J. McIntyre (P17450)
    Kathryn S. Wood (P55012)
    Daniel J. Phillips (P74101)
Attorneys for Wayne State University
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425
(313) 223-3500

Dated:  July 17, 2014

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA
ex rel. Christian Kreipke, and CHRISTIAN
KREIPKE, an individual

      Plaintiffs,                Case No. 12-cv-14836-AC-RSW

v.                                Hon. Avern Cohn
                                Mag. Steven Whalen

WAYNE STATE UNIVERSITY, and
UNIVERSITY PHYSICIAN GROUP,

      Defendants.

---

**DEFENDANT WAYNE STATE UNIVERSITY'S BRIEF IN SUPPORT OF**
**ITS MOTION TO DISMISS AND FOR COSTS AND ATTORNEYS FEES**

## **TABLE OF CONTENTS**

ISSUES PRESENTED...................................................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES...........................iv

I.      INTRODUCTION ..............................................................................1

II.     BASIC FACTS ALLEGED BY PLAINTIFF................................................3

III.    DISCUSSION ...................................................................................4

      A.     Applicable Standards of Review ..........................................................4

           1.     Standards under Fed. R. Civ. P. 12(b)(6), 9(b), 8(c), and *Ashcroft v. Iqbal*...........................................................................4

           2.     Standard under Fed. R. Civ. P. 12(b)(1). ...................................6

      B.     Plaintiff's FCA claims (Counts 1 through 5) are barred because WSU is not a "person" subject to liability under the Act. ..................6

           1.     The False Claims Act does not apply to States or state agencies. ....................................................................................7

           2.     As a matter of law, WSU is an "arm of the state." ....................9

      C.     Even if WSU could somehow be subjected to the FCA (which it cannot), Plaintiff's FCA claims are not adequately pled. ..................12

           1.     The Conspiracy count (Count 3) is fundamentally deficient........................................................................................13

           2.     The "Reverse False Claim" count (Count 4) is also fundamentally deficient. ...........................................................15

      D.     The State Law Claims are barred by the Michigan Governmental Tort Liability Act.........................................................16

           1.     Plaintiff has failed to plead any facts in avoidance of governmental immunity. ..........................................................17

2.    The claim of Retaliatory Discharge in Violation of Public Policy (Count 6) must be dismissed as a matter of law because hiring and discharge are governmental functions. ......18

3.    The Defamation claim (Count 7) must be dismissed as a matter of law because WSU's President, Dr. M. Roy Wilson, was authorized by law to defend the University. ........19

E.    Alternatively, all of Plaintiff's claims are barred by Eleventh Amendment immunity, and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). .............................................................................22

IV.    CONCLUSION............................................................................................25

## <u>ISSUES PRESENTED</u>

1.  While the False Claims Act ("FCA") only imposes liability on any "person" who commits a violation of its provisions, the First Amended Complaint does not aver that WSU is a "person" subject to the FCA.  Also, as a matter of law, the FCA does not apply to States, state agencies and "arms of the state."   Courts in this Circuit have repeatedly held that Wayne State University ("WSU") is an arm of the State of Michigan.  In light thereof, should Plaintiff's FCA claims against WSU be dismissed?

    WSU Answers: Yes

2.  Pursuant to Federal Rule of Civil Procedure 9(b), a complaint alleging FCA claims must be pled with particularity – that is, sufficient facts that allege the "who, what, when, where, and how" of the alleged violations.   Here, Plaintiff has failed to specify any facts that form the basis of his FCA claims, particularly those for conspiracy and "reverse false claims."  In light thereof, should Plaintiff's FCA claims be dismissed?

    WSU Answers:  Yes

3.  The Michigan Governmental Tort Liability Act ("GTLA") provides immunity for governmental agencies if they are engaged in the exercise or discharge of a governmental function.  WSU, a "governmental agency" under the GTLA, was exercising a governmental function when it terminated Plaintiff and published the allegedly defamatory article.  Is WSU, therefore, immune from Plaintiff's state law retaliatory discharge and defamation claims?

    WSU Answers:  Yes

4.  The Eleventh Amendment to the U.S. Constitution bars suits from being commenced in federal court against a State and its agencies.  Here, all of Plaintiff's claims are brought against WSU, which, as a matter of law, is an "arm of the state" of Michigan entitled to Eleventh Amendment immunity.  If Plaintiff's claims somehow survive dismissal for the non-constitutional reasons discussed herein, should all his claims against WSU be dismissed for lack of subject matter jurisdiction?

    WSU Answers:  Yes

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

In support of its Motion to Dismiss, WSU relies on the following authorities, and the other law cited herein:

## **Decisions**

*American Transmissions v. A.G.*, 560 N.W.2d 50; 454 Mich. 135 (Mich. 1997)

*Ashcraft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Coleman v. Wayne State University*, 664 F. Supp. 1082 (E.D. Mich. 1987)

*Dextrom v. Wexford County*, 789 N.W.2d 211; 287 Mich. App. 406 (Mich. Ct. App. 2010)

*Galli v. Kirkeby*, 248 N.W.2d 149; 398 Mich 527 (Mich. 1979) (Williams, J, concurring)

*Grinter v. Knight*, 532 F.3d 567 (6th Cir. 2007)

*Johnson v. Wayne State Univ.*, No. 06-13636, 2006 U.S. Dist. LEXIS 90019 (E.D. Mich. Nov. 27, 2006) (Cohn, J.)

*Marrocco v. Randlett*, 433 N.W.2d 68; 431 Mich 700 (Mich. 1988)

*McCann v. Michigan*, 247 N.W.2d 521; 398 Mich. 65 (Mich. 1976)

*McCarthy v. Brownstown Twp*., No. 289651, 2010 Mich App LEXIS 679 (Mich. Ct. App Apr. 20, 2010)

*Simmons v. Napier*, No. 11-13403 (E.D. Mich. June 28, 2013) (slip op)

*Tate v. City of Grand Rapids*, 671 N.W.2d 84; 256 Mich. App. 656 (Mich. Ct. App. 2003)

*Thompson v. Wayne County Treasurer,* No. 277837, 2008 Mich. App. LEXIS 942 (Mich. Ct. App. May 8, 2008)

*United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398 (5th Cir. 2004)

*United States ex rel. Am. Textile Mfrs. Inst. Inc. v. Limited, Inc.*, 190 F.3d 729 (6th Cir. 1999)

*United States ex rel. Ruotsinoja v. Bd. of Governors*, No. 12-cv-00269-RBJ-MJW, 2014 U.S. Dist. LEXIS 68335 (D. Col. May 19, 2014)

*United States ex rel. Winkler v. BAE Sys.*, 957 F. Supp. 2d 856 (E.D. Mich. 2013)

*VIBO Corp. v. Conway*, 669 F.3d 675 (6th Cir. 2012)

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000).

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003).

## Statutes

31 U.S.C. § 3279

31 U.S.C. § 3720

28 U.S.C. § 2412(d)

28 U.S.C. § 1927

## Rules

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 8(c)

## I.  <u>INTRODUCTION</u>

Plaintiff/"Relator" Dr. Christian Kreipke ("Plaintiff") filed a so-called "Qui-Tam" complaint alleging multiple causes of action against Wayne State University ("WSU") under the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA"), as well as state law claims for retaliatory discharge in violation of public policy (the "retaliatory discharge" claim) and defamation.  Plaintiff's First Amended Complaint (the "Amended Complaint"), however, fails to state a claim against WSU as a matter of law and is subject to dismissal, for at least four reasons:

**<u>First</u>**, all of Plaintiff's claims under the FCA (Counts 1 through 5) should be dismissed because WSU is not a "person" subject to liability under the FCA.  The Amended Complaint does not allege that WSU is a "person" subject to the FCA in any well-pled facts in this regard.  More importantly, the Supreme Court has held that the FCA does not provide a cause of action against States and state agencies. This exclusion includes public universities, like WSU, that are "arms of the state." Courts in this Circuit (including the Eastern District of Michigan) have held that WSU is an "arm of the state."  As such, WSU is entitled to dismissal of Plaintiff's FCA claims as averred in Counts 1 through 5 of the Amended Complaint.

**<u>Second</u>**, even if WSU were somehow a "person" subject to the FCA, Plaintiff's FCA claims – and particularly his claims of conspiracy (Count 3) and reverse false claims (Count 4) – are patently deficient.  FCA claims must be

alleged with particularity and "plausibility" pursuant to Fed. R. Civ. P. 9(b) and the pleading requirements of *Twombly* and *Iqbal*.  Here, Plaintiff has failed to aver any well pled facts to show a plausible inference that WSU violated the FCA. Accordingly, all of the FCA claims are subject to dismissal on this ground.

**Third,** WSU has immunity under the Michigan Governmental Tort Liability Act (the "GTLA") as to the state law claims for retaliatory discharge (Count 6) and defamation (Count 7).  The GTLA provides immunity to "governmental agencies" when engaged in the discharge of a governmental function.  WSU, a "governmental agency" under the GTLA, exercised a governmental function when it terminated Plaintiff and published the allegedly defamatory article that was drafted after WSU received the complaint from the Detroit Free Press and after a story regarding Plaintiff's version of events was published.  Accordingly, WSU is immune as to Plaintiff's retaliatory discharge and defamation claims, and those counts must be dismissed.

**Fourth**, all of Plaintiff's claims should be dismissed pursuant to Eleventh Amendment sovereign immunity.  The Eleventh Amendment bars suit in federal court against a State and its agencies.  WSU is an "arm of the state" of Michigan, and is entitled to Eleventh Amendment immunity.  Accordingly, all of Plaintiff's claims against WSU (Counts 1 through 7) must also be dismissed on Eleventh Amendment grounds, if the Court does not dismiss them for the above grounds.

2

## II.    BASIC FACTS ALLEGED BY PLAINTIFF[1]

As is alleged in the Amended Complaint, WSU consists of 13 schools and colleges, including its nationally ranked School of Medicine. (Docket Entry 19, Amended Complaint,  ¶ 11). WSU is a state-funded university. (*Id.*)  WSU also receives funding from the National Institute of Health ("NIH") that supports various research conducted in its School of Medicine. (*Id.*; *see also*, Ex. B). Funded grants are subject to audit. (Docket Entry 19, Amended Complaint, Ex. X). Plaintiff – who was the Project Director/Principal Investigator for the grants at issue (Docket Entry 19, Amended Complaint, ¶ 61 and Ex. B, p. 26) – alleges that WSU "inflated material costs" with respect to certain grants, rapidly drew down the grants, and in doing so, submitted false claims to the government. (*See* Docket Entry 19, Amended Complaint generally).

Plaintiff further claims that he complained about the alleged false claims and that he was, thereafter, terminated on February 29, 2012. (Docket Entry 19, Amended Complaint ¶ 81; Exs. T, U).  Plaintiff litigated his termination through arbitration, and the decision to terminate him for research fraud was upheld by the arbitrator. (Docket Entry 19, Amended Complaint ¶ 82).

---

[1] For the purposes of this Motion only, any well-alleged facts in Plaintiff's Amended Complaint must be accepted as true.   Conclusory or speculative allegations, however, should not be accepted as true.  *See LULAC v. Bredsen*, 500 F.3d 523, 527 (6th Cir. 2007) (holding that the Court "need not accept as true legal conclusions or unwarranted factual inferences").

On October 31, 2012 (after the Arbitration) the Complaint in this action was filed under seal. (See Docket Entry 1). Subsequently, the Attorney General investigated Plaintiff's claims, and, pursuant to 31 U.S.C. § 3730(3)-(5), declined to intervene. (Docket Entry 17). On March 17, 2014 the Complaint was unsealed. (Docket Entry 18; Docket Entry 19, Amended Complaint ¶ 87). Before WSU was served with that Complaint, the media forwarded a copy of the Complaint to WSU. (Docket Entry 19, Amended Complaint, Ex. Y). Thereafter, the President of WSU issued a response that was published in the Detroit Free Press (the "Article"). (*Id*). Plaintiff alleges that WSU's responsive Article is defamatory and retaliatory. (*Id.*; *See also*, Docket Entry 19, Amended Complaint, Ex. Z).

On June 5, 2014 the Amended Complaint was filed. (Docket Entry 19). This Motion is filed in response thereto.

## III. DISCUSSION

### A. Applicable Standards of Review

#### 1. Standards under Fed. R. Civ. P. 12(b)(6), 9(b), 8(c), and *Ashcroft v. Iqbal*.

As the Court well knows, Fed. R. Civ. P. 12(b)(6) requires dismissal for "failure to state a claim upon which relief can be granted." Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy Rule 8(a)(2)'s standard, the complaint must set forth facts that raise a "plausible inference" that the defendant inflicted a legally cognizable harm

upon the plaintiff.  *Ashcraft v. Iqbal*, 556 U.S. 662, 682 (2009).  *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  And "[p]lausibility requires showing more than the 'sheer possibility' of relief."  *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278 (6th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).  A plaintiff's factual allegations, while "assumed to be true, must do more that create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *LULAC v. Bredsen*, 500 F.3d 523, 527 (6th Cir. 2007).  And the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  Indeed, "legal conclusions masquerading as factual allegations will not suffice."  *Eidson v. State of Tenn. Dept. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Moreover, complaints brought under the FCA must meet the more demanding standard of "particularity" under Fed. R. Civ. P. 9(b).  *See United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 645 (6th Cir. 2003).  "[A] complaint alleging [an FCA] claim must state the circumstances surrounding the FCA violation with particularity."  *Id.* at 642-43.  The *qui tam* complaint must "identify specific parties, contracts, or fraudulent acts" and may not "rely upon blanket references to acts or omissions by all of the defendants."  *Id.* at 643.  Put simply, this requires the plaintiff to allege "the who, what, when,

5

where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006).

### 2.    Standard under Fed. R. Civ. P. 12(b)(1).

Eleventh Amendment immunity divests a federal district court of subject matter jurisdiction. *See Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000). Pursuant to Fed. R. Civ. P. 12(b)(1), a party may move to dismiss a claim on the basis that the court lacks subject matter jurisdiction. *Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir. 2011). "When the defendant challenges the existence of subject-matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists*." Id. See also Shea v. State Farm Ins. Cos.*, 2 Fed. Appx. 478, 479 (6th Cir. 2001) ("The plaintiff bears the burden of establishing a court's subject matter jurisdiction over a claim."). However, a court should base a dismissal on Eleventh Amendment grounds only as a last resort, after exhausting other non-constitutional grounds. *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000).

### B.    Plaintiff's FCA claims (Counts 1 through 5) are barred because WSU is not a "person" subject to liability under the Act.

As is alleged in the Amended Complaint, the False Claims Act imposes civil liability only upon "any **person**" who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States Government.  31 U.S.C. § 3729(a) (emphasis added); (Amended Complaint,

6

¶ 13).  Thus, for a complaint to adequately plead any cause of action for violation of the FCA, it must aver and establish facts that WSU is a "person," as required by the statute.

 1.  **The False Claims Act does not apply to States or state agencies.**

The United States Supreme Court has made it clear that the False Claims Act does not provide a cause of action against States and state agencies.  *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000).

In *Stevens*, the Supreme Court applied "its longstanding interpretive presumption that 'person' does not include the sovereign."  *Id.* at 780.  As the Court noted:  "The presumption is particularly applicable where it is claimed that Congress has subjected the States to liability to which they had not been subject before."  *Id.* at 780-81 (internal citations and quotation marks omitted).  "Although the liability provision of the original FCA has undergone various changes, none of them suggests a broadening of the term 'person' to include States."  *Id.* at 781. *Id.* at 787.  Accordingly, the Supreme Court held that "a private individual has standing to bring suit in federal court on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733, but *that the False Claims Act does not subject a State (or state agency) to liability in such actions.*"  *Id.* at 787-88 (emphasis added).

Following *Stevens*, federal courts across the country have dismissed or affirmed dismissal under Rule 12(b)(6) of FCA actions brought against state colleges and universities and their governing bodies on the basis that they are "arms of the state," and accordingly, are not "persons" under the FCA.  Indeed, courts have noted "the substantial number of cases that have already recognized that public universities and their governing boards are 'arms-of-the-state.'"  *United States ex rel. Ruotsinoja v. Bd. of Governors*, No. 12-cv-00269-RBJ-MJW, 2014 U.S. Dist. LEXIS 68335, at *15-17 (D. Col. May 19, 2014) (holding that Colorado State University was an arm of the state and thus not a "person capable of being sued in a *qui tam* action under the False Claims Act").  *See also United States v. Solinger*, 457 F. Supp. 2d 743, 755 (W.D. Ken. 2006) (holding that the University of Louisville "enjoy[s] immunity from suits brought under the FCA"); *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 401-2 (5th Cir. 2004) (dismissing FCA claims against the University of California and the laboratory it managed because both parties were state entities under *Stevens*; "The California court properly dismissed the FCA claims against [the University and the laboratory] because those entities are California state agencies and the FCA does not provide a cause of action against state agencies"); *United States ex rel. King v. Univ. of Texas Health Science Ctr.*, 544 Fed. Appx. 490 (5th Cir. 2013) (holding that the University of Texas Health Science Center-Houston "is not a 'person'

8

under the FCA, and is not subject to qui tam liability, " and affirming "the district court's dismissal of plaintiff's qui tam claim under Rule 12(b)(6) for failure to state a claim under the FCA."); *United States ex rel. Lewis v. Walker*, No. 06-cv-16 (CDL), 2007 U.S. Dist. LEXIS 68208, at *25 (M.D. Ga. Sept. 14, 2007) (dismissing relator's FCA claims against the Board of Regents of the University of Georgia; "Since the Board is an agency of the State of Georgia, it is not a "person" subject to liability under the FCA and must be dismissed as a Defendant").

### 2.   As a matter of law, WSU is an "arm of the state."

In the Sixth Circuit, "[t]o determine whether an entity is an arm of the state, courts have traditionally looked to several factors, including: (1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding.".   *S.J. v. Hamilton County,* 374 F.3d 416, 420 (6th Cir. 2004).  "Specific characteristics which courts have looked to in determining whether a ***university*** is a state institution include whether payment of judgment would be out of state funds, whether the institution was created by statute or state constitution, to what extent the institution is supported by the state, and what degree of independence the officers of the institution have." *Williams v. Michigan State Univ.*, No. 93-cv-72, 1994 U.S. Dist. LEXIS 724, at

*10 (W.D. Mich. Jan. 3, 1994) (citing *Estate of Ritter v. University of Michigan*, 851 F.2d 846 (6th Cir. 1988)) (emphasis added).

All of these factors dictate a finding, as a matter of well-established law, that WSU is an "arm of the state." WSU is a public university created by the Michigan Constitution. MICH. CONST. ART. 8, § 5. WSU receives its funding from the State of Michigan, and is accountable to the State for its expenditures. MICH. CONST. ART. 8, § 4. It is maintained by the State of Michigan. *See* M.C.L. § 390.641 ("The institution shall be maintained by the state of Michigan."); M.C.L. § 390.649 (appropriating funds from the State of Michigan's general fund to the board of governors of WSU). Further, under its enabling statute, WSU's board of governors is considered a state agency with the power of condemnation. M.C.L. § 390.648. Lastly, any judgment against WSU will be paid out of the state's tax revenues. M.C.L. § 600.6095.

Thus, Courts in the Sixth Circuit (including this Court) have repeatedly held that Wayne State University is an "arm of the state" of Michigan for purposes of Eleventh Amendment immunity.[2] *See Johnson v. Wayne State Univ.*, No. 06-

---

[2] Courts in the Sixth Circuit have repeatedly held that all public universities in the state of Michigan are "arms of the state." *See Estate of Ritter v. University of Michigan*, 851 F.2d 846, 849 (6th Cir. 2000) (holding that a state university is an 'arm of the state' under Michigan law); *Gardner v. Mich. State Univ. Bd. of Trs.,* No. 12-cv-1018, 2014 U.S. Dist. LEXIS 20053, at *16 (W.D. Mich. Feb. 11, 2014) ("Michigan State University is an arm of the state of Michigan, and it is therefore not considered a 'person' for purposes of § 1983 or § 1985."); *Dillon-Barber v.*

13636, 2006 U.S. Dist. LEXIS 90019, at *8 (E.D. Mich. Nov. 27, 2006) (Cohn, J.) (holding that Wayne State University is an arm of the state; "Under Michigan law, a state university is an 'arm of the state' entitled to Eleventh Amendment immunity."); *Simmons v. Napier*, No. 11-13403 (E.D. Mich. June 28, 2013) (weighing the above factors and holding that, based on those factors, "the Court finds that WSU is an arms of the state"); *Coleman v. Wayne State University*, 664 F. Supp. 1082, 1085 (E.D. Mich. 1987) ("Defendant Wayne State University is a state instrumentality, and therefore qualifies for state immunity under the Eleventh Amendment. The University's origins are in the Michigan State Constitution, and its Board of Governors is a constitutional body. There is no reason to distinguish Wayne State University from other Michigan universities whose constitutional status, other courts have held, confers Eleventh Amendment immunity."). *See also Komanicky v. Teachers Ins. & Annuity Ass'n*, No. 99-1687, 2000 U.S. App. LEXIS 22984 (6th Cir. Sept. 7, 2000) (in the context of a case involving an ERISA plan exemption, holding that "Wayne State University's Board of Governors is clearly a state agency.").

As an arm of the state of Michigan, WSU cannot be a "person" within the purview of the FCA. Accordingly, Plaintiff's FCA claims should be dismissed.

---

*Regents of Univ. of Mich.*, 51 F. Appx. 946, 952 (6th Cir. 2002) (holding that "the University [of Michigan] is not a 'person' under § 1983").

**C.    Even if WSU could somehow be subjected to the FCA (which it cannot), Plaintiff's FCA claims are not adequately pled.**

As discussed above, because WSU is not a "person" under the FCA, Plaintiff cannot maintain any of his FCA claims.  But even if Plaintiff could, however, somehow assert claims against WSU, he has not pled any his FCA claims with the requisite particularity and plausibility.  The Amended Complaint as a whole fails Rule 9(b) and the requirements of *Iqbal* because, while it is filled with a plethora of conclusions and inflammatory statements, it is sorely lacking in factual specificity to establish Plaintiff's FCA claims.

A claim under the FCA must satisfy the particularity requirement under Fed. R. Civ. P. 9(b).  *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).    Requirements for pleading in the context of a *qui tam* action are "demanding."  *United States ex rel. Laucirica v. Stryker Corp.*, No. 09-cv-63, 2010 U.S. Dist. LEXIS 42881, at *14 (W.D. Mich. May 3, 2010).  In the specific context of a claim under the FCA, "a complaint alleging [an FCA] claim must state the circumstances surrounding the FCA violation with particularity."  *Bledsoe*, 342 F.3d at 642-43.  The *qui tam* complaint must "identify specific parties, contracts or fraudulent acts" and may not "rely upon blanket references to acts or omissions by all the defendants."  *Id.* at 643.  Put simply, an FCA complaint must state "enough facts to state a claim to relief that is plausible on its face."  *Sanderson*, 447 F.3d at 877 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

12

Plaintiff's FCA claims are patently deficient in this regard. The most egregious of its pleading deficiencies is the Amended Complaint's failure to show the requisite "plausibility" with regard to the conspiracy (Count 3) and "reverse false claims" (Count 4) claims.

### 1.    The Conspiracy count (Count 3) is fundamentally deficient.

Section 3729(a)(1)(C) creates liability under the FCA for conspiring to commit violations of the FCA. 31 U.S.C. § 3729(a)(1)(C) (providing that "any person who . . . conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G) . . . is liable to the United States Government"). "To state a claim under the FCA for conspiracy, a plaintiff must plead that the alleged conspirators agreed to make use of a false record or statement to achieve the end of getting the government to pay the claim." *United States v. Toyaobo Co. Ltd.*, 811 F. Supp. 2d 37, 50 (D. D.C. 2011). And "Rule 9(b)'s heightened pleading standard applies to FCA claims of conspiracy to defraud the government." *United States ex rel. Winkler v. BAE Sys.*, 957 F. Supp. 2d 856, 876 (E.D. Mich. 2013) (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106-07 (9th Cir. 2003)). "Under Rule 9(b), general allegations of conspiracy, without supporting fact to show when, where or how the alleged conspiracy occurred, amount to only a legal conclusion and are insufficient to state a cause of action." *Id*.

13

Plaintiff's Amended Complaint is utterly deficient in pleading conspiracy.  It does not allege any facts to support when, where, or how the conspiracy occurred. Plaintiff's Conspiracy claim is wholly conclusory, and as such, fails to meet to pleading standards of Rule 9(b).

This is not a simple pleading deficiency that Plaintiff could cure by amendment of his Amended Complaint.  *See Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005) ("A court need not grant leave to amend [] where amendment would be 'futile.'  Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss.")  Because WSU is not a "person" under the FCA, it cannot be liable for any provision of the FCA, including civil conspiracy under 31 U.S.C. § 3729(a)(1)(C).  *See United States ex rel. Coppock v. Northrop Grummon Corp.*, No. , 2003 U.S. Dist. LEXIS 12626, at *48 n.17 (noting that "secondary liability for conspiracy under [the FCA] cannot exist without a viable underlying claim. . . . [a] claim for civil conspiracy is generally not viable without the commission of an underlying wrongful act").  Accordingly, a second amended complaint, no matter how it is pled, would be subject to dismissal, and would therefore be futile.

Accordingly, Plaintiff's conspiracy claim fails as a matter of law.[3]

---

[3] For the same reasons discussed in Section C.1, above, any amendment of Plaintiff's "Reverse False Claims" count would also be futile.

##### 2.   The "Reverse False Claim" count (Count 4) is also fundamentally deficient.

Section 31 U.S.C. § 3729(a)(1)(G), known as the "reverse false claims" provision, "refers generally to a false statement made to conceal, avoid or decrease an obligation to pay money to the government." *United States ex rel. Am. Textile Mfrs. Inst. v. Limited, Inc.*, No. C2-97-776, 1997 U.S. Dist. LEXIS 18142, at *21 n.5 (S.D. Ohio Nov. 13, 1997).   The "obligation" necessary to invoke this provision is limited to a present, existing duty to pay the government and does not cover "potential" or "future" obligations. *See United States ex rel. S. Prawer v. Verill & Dana*, 946 F. Supp. 87, 95 (D. Me. 1996).   "A reverse false claim action cannot proceed without proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation sufficiently certain to give rise to an action of debt at common law." *United States ex rel. Am. Textile Mfrs. Inst. Inc. v. Limited, Inc.*, 190 F.3d 729, 736 (6th Cir. 1999).

Similar to his Conspiracy claim, Plaintiff has made no effort whatsoever in his Amended Complaint to present any factual basis for his "Reverse False Claims" claim.   The Amended Complaint does not allege with any specificity that WSU owed the government a debt at the time of any alleged false statements.   Put simply, this claim does not meet the requirements of Rule 9(b), and accordingly, also fails as a matter of law.

15

**D.** **The State Law Claims are barred by the Michigan Governmental Tort Liability Act.**

Plaintiff's sole remaining claims – his state law claims for Retaliatory Discharge in Violation of Public Policy (Count 6) and Defamation (Count 7) – are barred by the Michigan Governmental Tort Liability Act, M.C.L. § 691.1401, *et. seq*. (the "GTLA").     Under Michigan law, a governmental agency is absolutely immune from all tort liability when engaged in the exercise or discharge of a governmental function.  M.C.L. § 691.1407(1).  "Governmental agency" is defined by the GTLA as "this state or a political subdivision."  M.C.L. § 691.1401(a).  The term "[s]tate includes a public university or college of this state, whether established as a constitutional corporation or otherwise."  M.C.L. § 691.1401(g).

The GTLA "grants broad immunity to all governmental agencies, extending immunity to all governmental agencies for *all* tort liability whenever they are engaged in the exercise or discharge of a governmental function."  *Tate v. City of Grand Rapids*, 671 N.W.2d 84, 85-86; 256 Mich. App. 656 (Mich. Ct. App. 2003) (emphasis in original).  In the context of the GTLA, an activity is either a "governmental function" or an *ultra vires* act.  "[A] governmental function is an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law."  *Dextrom v. Wexford County*, 789 N.W.2d 211, 217; 287 Mich. App. 406 (Mich. Ct. App. 2010).  By contrast, an *ultra vires act* is an "activity *not* expressly or impliedly mandated or authorized by

16

law." *Id*. at 218 (emphasis in original) (quoting *Richardson v. County of Jackson*, 443 N.W.2d 105, 106; 432 Mich. 377 (Mich. 1989)).

In order "to determine whether a governmental agency is engaged in a governmental function, the focus must be on the general activity, not the specific conduct involved at the time of the tort." *Tate*, 671 N.W.2d at 87 (quotation marks omitted).  As a result, the "improper performance of an activity authorized by law is, despite its impropriety, still 'authorized' within the meaning of the governmental function test." *Richardson*, 443 N.W.2d at 108.   "In sum, *ultra vires* activity is not activity that a governmental agency performs in an unauthorized manner.  Instead, it is activity that the governmental agency lacks legal authority to perform in any manner." *Id*. at 109.

### 1.   **Plaintiff has failed to plead any facts in avoidance of governmental immunity.**

At the outset, Plaintiff's retaliatory discharge claim fails as a matter of law because it is not properly pled, pursuant to Rules 9(b), 8(c), and *Twombly/Iqbal*. To maintain an action against a government agency, a plaintiff must plead facts in avoidance of immunity.  *McCann v. Michigan*, 247 N.W.2d 521 523-24; 398 Mich. 65 (Mich. 1976).   A complaint pleads facts in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function.   *Id.*   The Amended

17

Complaint here has not pled any facts that would subject WSU to liability for retaliatory discharge or defamation under Michigan law. Accordingly, such claims fail on this ground alone.

> **2. The claim of Retaliatory Discharge in Violation of Public Policy (Count 6) must be dismissed as a matter of law because hiring and discharge are governmental functions.**

Even if the Plaintiff had somehow pled some facts in avoidance of immunity, his claims still fail as a matter of law. "It is settled that the hiring, supervision, discipline and discharge of a government employee is the exercise of a governmental function." *McCarthy v. Brownstown Twp*., No. 289651, 2010 Mich App LEXIS 679, at *11 (Mich. Ct. App Apr. 20, 2010). *See also Galli v. Kirkeby*, 248 N.W.2d 149, 152; 398 Mich 527 (Mich. 1979) (Williams, J, concurring) (holding that "screening, hiring, and supervision" of personnel is a governmental function); *Bozarth v. Harper Creek Bd. of Ed.*, 288 N.W.2d 424, 425; 94 Mich. App. 351 (Mich. Ct. App. 1979) (same); *Nunn v. Flint Housing Comm'n*, No. 264262, 20 Mich. App. LEXIS 368, at *8 (Mich. Ct. App. Feb. 14, 2006)("…because only public policy, not statute, recognizes termination for refusal to break the law as a actionable tort, and because that tort thus is not among the statutory exceptions to governmental immunity, an adverse hiring decision in violation of public policy is not actionable against a governmental agency."); *Thompson v. Wayne County Treasurer,* No. 277837, 2008 Mich. App. LEXIS 942,

(Mich. Ct. App. May 8, 2008) (holding that governmental agency was immune to a termination in violation of public policy claim).

In summary, WSU, a governmental agency, was engaged in a government function when Plaintiff was disciplined and discharged, which is the crux of Plaintiff's retaliatory discharge claim.  Pursuant to M.C.L. § 691.1407(1), WSU is immune from Plaintiff's retaliatory discharge claim, which should be dismissed.[4]

> **3.    The Defamation claim (Count 7) must be dismissed as a matter of law because WSU's President, Dr. M. Roy Wilson, was authorized by law to defend the University.**

Like his retaliatory discharge claim, Plaintiff has failed to plead any facts in avoidance of immunity as to his defamation claim.  Accordingly, Plaintiff's defamation claims also fails on its face.  But even if Plaintiff's claim was not fatally pled, WSU's President, Dr. M. Roy Wilson, was engaged in a governmental function (and acting within the scope of his authority) when he authored the Article.

Whether an official's actions are within his or her authority is determined by examining the "reasonably 'objective' aspect[s] of the overall factual context." *American Transmissions v. A.G.*, 560 N.W.2d 50, 53 n.10; 454 Mich. 135 (Mich. 1997).  This includes but is not limited to "the nature of the specific acts alleged,

---

[4] As the Amended Complaint avers, Plaintiff previously filed a claim of wrongful discharge, which was adjudicated against him in an arbitration.  (Amended Complaint ¶ 81-86; Amended Complaint, Ex. V).  Thus, Plaintiff has had his "day in Court" on his employment discharge claim.

the position held by the official alleged to have performed the acts, the charter, ordinances or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government."  *Marrocco v. Randlett*, 433 N.W.2d 68, 72; 431 Mich 700 (Mich. 1988).

The Board of Governors of WSU (the "Board") is vested with the control over WSU's affairs.   M.C.L. § 390.641.  As such, it "may enact and amend rules and bylaws, for the conduct of the board's business and for the government of the institution."  M.C.L. § 390.645(2).  The Board, through its bylaws, has given the President of WSU broad authority to conduct WSU's business.   Indeed, the President is the "Chief Executive Officer of the University," and "[t]he administration of the University is vested in the President, who shall carry out the policies established by the Board."  Wayne State University Statutes § 1.10.01.250. As part of his responsibilities, the President "shall designate such other Executive Officers of the University as the President deems necessary and shall designate their duties and responsibilities."  Wayne State University Statutes § 1.10.01.260 and 2.12.01.030.   This includes supervision of WSU's "Marketing and Communications Office," which is "responsible for appropriate areas that may be designated by the President."  Wayne State University Statutes § 2.12.01.071.  As evidenced by these statutes and bylaws, President Wilson (and, by extension,

20

WSU) was authorized to issue statements and communications concerning its affairs, and protect its reputation to the public.

That the highest official of a state instrumentality would have such authority is not surprising. *American Transmissions v. A.G.*, 560 N.W.2d 50; 454 Mich. 135 (Mich. 1997) is instructive. There, the Attorney General for the State of Michigan conducted a "sting" operation in the mid-1980s to determine whether some independent transmission shops, including the plaintiff, were defrauding customers. *Id.* at 50. Five years after the sting went public, the Detroit News ran stories regarding the investigation. *Id.* at 51. Following these stories, the Attorney General appeared in a television interview. *Id.* The Attorney General referred to the parties that were investigated (including plaintiff) as "crooks and cheats" and stated that they were "operating crooked transmission shops." *Id.* Following these statements, the plaintiff filed a defamation action against the Attorney General. *Id.* The Attorney General moved to dismiss, and asserted governmental immunity under the GTLA. *Id.* In upholding the trial court's dismissal, the Court of Appeals held:

> In this case, the Attorney General allegedly defamed the plaintiffs during a 1991 television interview that concerned an earlier fraud investigation conducted by his department. Doubts had been expressed regarding the propriety of the department's conduct, and Mr. Kelley was responding to questions regarding the investigation. On these facts, the Attorney General clearly is 'immune from tort liability' because he was 'acting within the scope of [his] executive authority.'

21

*Id.*

Like the Attorney General in *American Transmissions*, WSU President Wilson wrote the Article in response to an inquiry from the Detroit Free Press concerning alleged misconduct by WSU – namely, Plaintiff's allegations in this lawsuit.  (Amended Complaint, Ex. Y).  In doing so, President Wilson was acting as spokesperson for WSU, the entity he is charged with administering.  President Wilson's authoring of the Article is authorized by WSU's bylaws and enabling statutes.  As such, President Wilson was performing "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law."  *Dextrom*, 789 N.W.2d at 217.  Accordingly, on the facts alleged by Plaintiff, and pursuant to M.C.L. § 691.1407, WSU is immune from Plaintiff's defamation claim.

**E.    Alternatively, all of Plaintiff's claims are barred by Eleventh Amendment immunity, and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).**

As the Supreme Court stated in *Stevens*, though the analyses are similar, if defendants move for dismissal on both statutory grounds under the FCA and Eleventh Amendment immunity, courts should address the statutory question first:

> We . . . have routinely addressed *before* the question whether the Eleventh Amendment forbids a particular statutory cause of action to be asserted against States, the question whether the statute itself *permits* the cause of action it creates to be asserted against States (which it can do only by clearly expressing such an intent).  When

22

these two questions are at issue, not only is the statutory question 'logically antecedent to the existence of' the Eleventh Amendment question, but also there is no realistic possibility that addressing the statutory question will expand the Court's power beyond the limits that the jurisdictional restriction has imposed.

*Stevens*, 529 U.S. at 779 (internal citations omitted).

Because the Court should find that Plaintiff's claims are barred under the FCA and the GTLA, it should not need to address the Eleventh Amendment constitutional issue. *See King*, 544 Fed. Appx. at 495 (dismissing the Plaintiff's FCA claims on statutory grounds and declining to address Eleventh Amendment immunity; "Pursuant to *Stevens*, we address first whether the FCA allows for [Plaintiff's] suit against the [Defendant]"). *See also Ruotsinoja*, 2014 U.S. Dist. LEXIS 68335, at *16 ("As noted above, the arm-of-the-state- analysis under the FCA is intertwined with the Eleventh Amendment immunity analysis. Because I find that the Board is an arm-of-the-state for FCA purposes, I decline to address the Eleventh Amendment's applicability in further detail.").

However, even if Plaintiff has somehow stated a claim under the FCA (which, as discussed above, he has not), his FCA claims would still be subject to dismissal on Eleventh Amendment immunity grounds. "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2007). While the Supreme Court in

23

*Stevens* did not reach the question of whether the Eleventh Amendment bars *qui tam* actions under the FCA against a state or state entity in federal court, it expressed its "serious doubt on that score." *Stevens*, 529 U.S. at 787. And pre-*Stevens*, federal courts held that the Eleventh Amendment provides immunity from FCA suits against states and state agencies. *See, e.g., United States ex rel. Foulds v. Texas Tech. Univ.*, 171 F.3d 279, 294 (5th Cir. 1999) ("[W]e hold that when the United States has not actively intervened in the action, the Eleventh Amendment bars qui tam plaintiffs from instituting suits against the sovereign states in federal court.").

As discussed above, Courts in the Sixth Circuit have repeatedly held that WSU is an "arm of the state" entitled to Eleventh Amendment immunity.[5] Further, the United States has declined to intervene in this suit under the *qui tam* provisions of the FCA. Plaintiff's claims against WSU are claims against an arm of the State of Michigan that is immune from suit under the Eleventh Amendment. Plaintiff's FCA claims are barred by the Eleventh Amendment, and should be dismissed.

Lastly, because immunity extends to state law claims brought in federal court, Plaintiff's retaliatory discharge and defamation claims are barred as well.

---

[5] *See Johnson v. Wayne State Univ.*, No. 06-13636, 2006 U.S. Dist. LEXIS 90019, at *8 (E.D. Mich. Nov. 27, 2006) (Cohn, J.); *Coleman v. Wayne State University*, 664 F. Supp. 1082, 1085 (E.D. Mich. 1987); *Komanicky v. Teachers Ins. & Annuity Ass'n*, No. 99-1687, 2000 U.S. App. LEXIS 22984 (6th Cir. Sept. 7, 2000).

*See VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012) ("The Eleventh Amendment to the U.S. Constitution grants immunity to states from litigation on state law claims in federal court").  Accordingly, Plaintiff's Amended Complaint is subject to dismissal in its entirety on Eleventh Amendment grounds.

## IV.     CONCLUSION

For the foregoing reasons, Wayne State University respectfully requests that the Court dismiss Plaintiff's First Amended Complaint against WSU in its entirety, and award WSU its costs and attorneys fees, pursuant to 31 U.S.C. § 3730(d)(4), 28 U.S.C. § 2412(d), 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11.

Respectfully submitted,
DICKINSON WRIGHT PLLC

By: /s/ Kenneth J. McIntyre
    Kenneth J. McIntyre (P17450)
    Kathryn S. Wood (P55012)
    Daniel J. Phillips (P74101)
Attorneys for Wayne State University
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425
(313) 223-3500

Dated:  July 17, 2014