**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,
*ex rel*, Dr. Christian Kreipke,

      Plaintiffs,                      Case No. 12-14836

v.                                    Hon. Avern Cohn

WAYNE STATE UNIVERSITY, and
UNIVERSITY PHYSICIAN GROUP,

      Defendants.

---

**DEFENDANT UNIVERSITY PHYSICIAN GROUP'S MOTION TO**
**DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

      Defendant, UNIVERSITY PHYSICIAN GROUP ("UPG"), by and through

its attorneys, hereby moves to dismiss Plaintiff Christian Kreipke's First Amended

Complaint, pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

      On July 18, 2014, the undersigned defense counsel attempted to conference

with Plaintiff's counsel seeking concurrence in the relief sought and explaining the

nature of the Motion.  Defense counsel was unable to conduct a conference.

      For the reasons given in the attached Brief in Support and its accompanying

Exhibits, Defendant UPG respectfully requests that this Honorable Court grant its

Motion to Dismiss Plaintiff's First Amended Complaint, dismiss the Complaint

with prejudice, and award to UPG its costs, attorney's fees and all other relief the

Court deems just and appropriate.

                    Respectfully submitted,

                    HALL RENDER KILLIAN HEATH & LYMAN

                    /s/ Jonathon A.  Rabin
                    Jonathon Rabin (P57145)
                    Bradley M.  Taormina (P76629)
                    Attorneys for Defendant UPG
                    201 West Big Beaver Road, Suite 1200
                    Troy, MI  48084
                    (248) 740-7505
                    jrabin@hallrender.com

Dated: July 18, 2014

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,
*ex rel*, Dr. Christian Kreipke,

      Plaintiffs,                    Case No. 12-14836

v.                                    Hon. Avern Cohn

WAYNE STATE UNIVERSITY, and
UNIVERSITY PHYSICIAN GROUP,

      Defendants.

---

**DEFENDANT UNIVERSITY PHYSICIAN GROUP'S**
**BRIEF IN SUPPORT OF MOTION TO DISMISS**

# **TABLE OF CONTENTS**

CONCISE STATEMENT OF THE ISSUES PRESENTED.....................................i

CONTROLLING OR MOST APPROPRIATE ........................................i

AUTHORITY FOR RELIEF SOUGHT..................................................i

INTRODUCTION ............................................................................1

STATEMENT OF FACTS ..................................................................1

ARGUMENT ..................................................................................6

I.      PLEADING STANDARDS ........................................................7

        A.    Federal Rules of Civil Procedure and 12(b)(6)....................7

        B.    Federal Rule of Civil Procedure 9(b).................................8

II.     THE AMENDED COMPLAINT FAILS TO PLEAD ANY CLAIM
        AGAINST UPG WITH THE REQUIRED PARTICULARITY ..................9

        A.    The Amended Complaint Fails to Identify the Time, Place, and Content
              of a Single Alleged Misrepresentation by UPG ......................9

        B.    The Amended Complaint Fails to Allege that UPG Submitted Any
              False Claim with the Required Intent ...................................13

III.    COUNT ONE FAILS BECAUSE KREIPKE DOES NOT ALLEGE ANY
        FALSE OR FRAUDULENT CLAIM WAS PRESENTED TO THE
        GOVERNMENT BY UPG...........................................................14

IV.     COUNT TWO FAILS BECAUSE KREIPKE DOES NOT ALLEGE THAT
        UPG MADE A FALSE RECORD OR STATEMENT MATERIAL TO A
        FALSE OR FRAUDULENT CLAIM...............................................15

V.      COUNT THREE FAILS BECAUSE KREIPKE FAILS TO PLEAD THE
        ELEMENTS OF A CONSPIRACY ...............................................17

VI.     COUNT FOUR FAILS BECAUSE KREIPKE DOES NOT ALLEGE THE
        ELEMENTS OF A REVERSE FALSE CLAIM AGAINST UPG..............19

VII.    COUNT FIVE FAILS BECAUSE KREIPKE WAS NOT AN EMPLOYEE,
        CONTRACTOR, OR AGENT OF UPG AND UPG DID NOT TAKE ANY
        RETALIATORY ACTION AGAINST KREIPKE ......................................21

VIII.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE
        BECAUSE FURTHER AMENDMENT WOULD BE FUTILE.................23

i

CONCLUSION ...................................................................................................25

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1.  Whether the Court should dismiss Plaintiff's First Amended Complaint against Defendant University Physician Group for failure to state a claim on which relief can be granted and failure to plead his claims against University Physician Group with the required particularity.

2.  Whether the dismissal should be with prejudice because any proposed amendment would be futile.

## CONTROLLING OR MOST APPROPRIATE
## AUTHORITY FOR RELIEF SOUGHT

**Decisions**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Chesbrough v. VPA, P.C.,* 655 F.3d 461 (6th Cir. 2011).

*Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001).

*Sanderson v. HCA-The Healthcare Co.,* 447 F.3d 873 (6th Cir. 2006)

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007).

*U.S. ex rel. Dennis v. Health Mgmt. Associates, Inc*., 3:09-CV-00484, 2013 WL 146048 (M.D. Tenn. Jan. 14, 2013).

*U.S. ex rel. Howard v. Lockheed Martin Corp*., 499 F. Supp. 2d 972 (S.D. Ohio 2007).

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co*., 532 F.3d 496 (6th Cir. 2008).

*U.S. ex rel. Winkler v. BAE Sys., Inc*., 957 F. Supp. 2d 856 (E.D. Mich. 2013).

*Wilkins ex rel. U.S. v. State of Ohio*, 885 F. Supp. 1055 (S.D. Ohio 1995).

**Statutes**

False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

**Rules**

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 12(b)(6)

i

## INTRODUCTION

Plaintiff/Relator Christian Kreipke ("Kreipke") brought this False Claims Act action against Wayne State University ("WSU") and University Physician Group ("UPG").  His First Amended Complaint tells a story about fraudulent research grant applications submitted to the federal government by WSU.  Kreipke, who does not allege to have been employed by UPG, concludes that UPG must also have participated in the allegedly fraudulent scheme.

Yet, aside from conclusory statements, Kreipke offers nothing to support False Claims Act allegations against UPG.  In fact, his claims against UPG actually got less specific between the filing of his original Complaint and his First Amended Complaint – from allegations "based on his own personal experience" to those made "upon information and belief." The First Amended Complaint lacks any allegations that UPG itself submitted any specific false claims to the government or that UPG otherwise violated the Act.  Kreipke attached 739 pages of exhibits to his First Amended Complaint, and not a single page even <u>mentions</u> UPG.  Because his claims against UPG lack the requisite particularity, they should be dismissed pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

## STATEMENT OF FACTS

Because this Motion seeks relief on the pleadings, this Statement of Facts rests on the allegations contained in Plaintiff's First Amended Complaint.

**The Parties**

Plaintiff/Relator Christian Kreipke ("Kreipke") was an employee of Wayne State University ("WSU"). (First Amended Complaint, Docket Entry 19 at ¶¶ 7, 9). Kreipke is a Ph.D., who was on a tenure-track at the WSU School of Medicine and also served on an audit and investigation committee for WSU. (*Id.* at ¶ 9). According to the documents attached to the First Amended Complaint, WSU terminated Kreipke's employment on February 29, 2012 for research misconduct. Specifically, the Provost and Vice President for Research upheld a committee's findings that Kreipke used misleading, false and fabricated information in connection with grant proposals and publications. (*Id.*, Ex. U)

Defendant WSU is a state university. (*Id.* at ¶ 12). Defendant UPG is a private, non-profit multispecialty physician group. (*Id.* at ¶ 11). Kreipke claims that Defendants violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq* ("FCA") by defrauding the government in connection with research grants.

**Procedural History**

Kreipke filed the initial Complaint against Defendants on October 31, 2012. (Complaint, Docket Entry 1). On March 14, 2014, the United States notified this Court of its election not to intervene in the case. (Notice of Election, Docket Entry 17). On March 17, 2014, this Court ordered that the Complaint be unsealed.

2

(Order, Docket Entry 18).  Kreipke filed a First Amended Complaint on June 5, 2014.  (First Amended Complaint).

In the First Amended Complaint, Kreipke withdrew Count VI (for retaliatory discharge in violation of public policy) against Defendant UPG (and re-alleged it against Defendant WSU).  (*Id.* at ¶¶ 124-130).  Kreipke added a seventh count for defamation, also limited to Defendant WSU only.  (*Id.* at ¶¶ 131-148).  Thus, there are five claims alleged against Defendant UPG and seven claims alleged against Defendant WSU.  (*Id.*).

### *Allegations Against Wayne State University*

WSU is the focus of Kreipke's First Amended Complaint.  Below is a brief summary of the allegations against Defendant WSU.  Kreipke alleges, *inter alia*:

1. That WSU inflated material costs associated with federal grants.  (First Amended Complaint at ¶¶ 14-15).  Because of this, Kreipke claims, WSU's grant budgets were false and fraudulent.  (*Id.* at ¶ 16).

2. That WSU allowed "Ghost" employees to draw salaries from grants they were not working on.  (*Id.* at ¶ 18).

3. That WSU artificially inflated researchers' salaries in its grant applications to increase the funds received.  (*Id.* at ¶ 19).

4. That WSU disregarded government-mandated salary caps for grant recipients, causing the federal government to overpay individual researcher salaries.  (*Id.* at ¶ 20).

5. That WSU submitted higher than actual effort reports for researchers working on the same grant as Kreipke, causing the U.S. Government to reimburse WSU a higher percentage of the researchers' salaries.  (*Id.* at ¶ 22).

6. That, when submitting grant applications, he and other researchers at WSU were required to omit the percent effort they spent performing duties unrelated to the grant application (e.g. clinical, teaching, and service duties), causing the inaccurate effort reports submitted by WSU to be false claims for payment. (*Id.* at ¶¶ 23-30). Kreipke claims that this practice is systemic at WSU, resulting in the U.S. Government being defrauded of millions of dollars. (*Id.* at ¶¶ 31, 32).

7. That WSU received, and failed to refund, money from the federal government by intentionally refraining from including large equipment purchases in its grant requests (because equipment purchases do not receive indirect costs), then purchasing the equipment after the funds were distributed without reporting it to the government (in order to keep the disbursements for indirect costs). (First Amended Complaint at ¶¶ 40-59).

8. That WSU made a false claim in regards to a grant (on which Kreipke was principal investigator) because his percent effort, and certain salaries and costs, were inflated and a ghost employee who did not actually work on the grant was included. (*Id.* at ¶¶ 60-67).

9. That WSU is aware of these issues and has done nothing to correct the illegal practices. (*Id.* at ¶¶ 67-77).

10. That he complained about these issues and was retaliated against and wrongfully terminated by WSU. (*Id.* at ¶ 81, Ex. U).

11. That WSU later defamed him by issuing a commentary published by the Detroit Free Press. (*Id.* at ¶ 88).

**The Paucity of Factual Allegations Against UPG.**

By contrast, Kreipke makes few factual allegations against Defendant UPG and, when he does, they are vague and non-specific. The First Amended Complaint contains 148 separately numbered paragraphs. Yet, Kreipke specifically refers to Defendant UPG in only five of those paragraphs. (*See* First Amended Complaint at ¶¶ 11, 30, 31, 34, 39). Other allegations in the First Amended Complaint make blanket and conclusory references to acts or omissions

4

by "Defendants," but fail to specify what, if any, conduct is attributable to UPG. Kreipke attached 739 pages of exhibits to his First Amended Complaint, including 490 pages of allegedly fraudulent grant applications.  Not a single one of the 739 pages refers to UPG.  (*See generally Id*. at Exs. A – AA).

Kreipke does not allege, nor could he allege, that he was ever employed by Defendant UPG.  (*See e.g. Id*. at ¶¶ 7, 9).  (*Id.*).  Although at one point he states that "Defendants" wrongfully terminated him (*Id.* at ¶ 120), he later clarifies that action was taken by WSU.  (*Id.* at ¶ 127).  The notice of termination Kreipke attached to his pleading is on WSU letterhead, makes no mention of UPG, and makes clear that "your employment with <u>Wayne State University</u> is to be terminated immediately."   (First Amended Complaint, Exhibit U) (emphasis added).

Kreipke describes an alleged practice of fraudulent effort reporting at WSU, which subject consumes nine paragraphs of his First Amended Complaint.  (*Id.* at ¶¶ 22-30).  He then issues the broad statement that "there is no doubt that this fraud is systemic at WSU and UPG" without describing any factual basis for that allegation (*Id.* at ¶ 31).  Kreipke does not include <u>any facts</u> regarding UPG and its alleged involvement in fraudulent effort reporting.  (*See Id.*).

Kreipke's final statements concerning UPG are ambiguous at best.  First, he explains that a researcher may not bill Medicare for work on <u>human</u> subjects when

such work overlaps with services performed under federal grants. (*Id.* at ¶ 33). Then, he states that UPG somehow billed Medicare for MRI studies performed on <u>non-human</u> subjects and that this resulted in both Medicare and federal research grants being billed for the same thing. (*Id.* at ¶¶ 35-38). These statements are made solely on Plaintiff's "information and belief" (*Id.* at ¶¶ 34 & 39) and include no specific details whatsoever of who did it, what MRIs were billed by UPG, how the scheme was accomplished or even when it occurred.

These are the extent of the brief factual allegations against Defendant UPG. Beyond this, Kreipke only makes conclusory legal allegations against UPG by referring to "Defendants" when stating his legal claims. For example, he states that "Defendants, by and through their agents, offices, or employees, knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States Government." (First Amended Complaint, at ¶ 93; *See also Id.* at ¶¶ 94, 97, 98, 101-105, 108-112, 120, 122). However, there is not another factual allegation against UPG in the First Amended Complaint.

## ARGUMENT

Kreipke's First Amended Complaint alleges that Defendant UPG violated Sections 3729(a)(1), (a)(2), (a)(3), (a)(7), and (h) of the FCA.[1] All of Kreipke's

---

[1] In 2009, the provisions of the FCA at issue in this case were amended and renumbered as Sections 3729(a)(1)(A), (a)(1)(B), (a)(1)(C), (a)(1)(G), and 3730(h). Fraud Enforcement and Recovery Act, Pub. L. 123 Stat. 1617 (2009); 31 U.S.C.

claims against UPG should be dismissed because Kreipke fails to satisfy the requirement in Fed. R. Civ. P. 9(b) that claims of fraud be pled with particularity and fail to state a claim upon which relief can be granted as required by Fed. R. Civ. P. 12(b)(6) and 8(a)(2).

## I.    PLEADING STANDARDS

A "complaint alleging false and fraudulent claims for payment in violation of the FCA must meet the pleading standards of both Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b)." *U.S. ex rel. Winkler v. BAE Sys., Inc*., 957 F. Supp. 2d 856, 862 (E.D. Mich. 2013) (citing *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.,* 342 F.3d 634, 645 (6th Cir. 2003)).

### A.    Federal Rules of Civil Procedure and 12(b)(6)

A complaint is properly dismissed under Federal Rule of Civil Procedure 12(b)(6) when it fails to state a claim upon which relief can be granted.  *Marlar*, 525 F.3d at 444.  The rule requires that a complaint articulate a "plausible" claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).  "[A] plaintiff's obligation [under the Rule] to provide the grounds of his entitlement to relief requires more

§§ 3729-3730.  As the original Complaint was filed in October of 2012, and the Amended Complaint was filed in June of 2014, it is unclear why Kreipke identifies the old section numbers.  Because Kreipke does not include any dates regarding his allegations against UPG, it is impossible to determine which version of the FCA applies.  Nevertheless, in this case, it is unnecessary to determine which version of the FCA applies because Kreipke fails to plead his claims with the required particularity and fails to state a claim upon which relief can be granted under either version of the applicable sections.

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted).  Further, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B.      Federal Rule of Civil Procedure 9(b)

"Because the basis for a *qui tam* action is *fraud* in the filing of claims against the government, we have held, as have other circuit courts in False Claims Act cases, that allegations in the complaint must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b)." *Sanderson v. HCA-The Healthcare Co.,* 447 F.3d 873, 876-77 (6th Cir. 2006); *see also Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466 (6th Cir. 2011) ("Complaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity because "defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts.").  The purpose of Rule 9(b) is to "alert defendants as to the particulars of their alleged misconduct,…prevent fishing expeditions,…protect defendants' reputations from allegations of fraud,…and to narrow potentially wide-ranging discovery to relevant matters." *Chesbrough,* 655 F.3d at 466.  "[A]t a minimum, Rule 9(b) requires that the plaintiff specify the who, what, when, where, and how of the alleged fraud.

*Sanderson,* 447 F.3d at 877 (citing *Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997)).

For the reasons that follow, Kreipke fails to satisfy either of these pleading standards and his First Amended Complaint against UPG should be dismissed.

## II.   THE AMENDED COMPLAINT FAILS TO PLEAD ANY CLAIM AGAINST UPG WITH THE REQUIRED PARTICULARITY

The Sixth Circuit has explained that to plead fraud with particularity, the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (citing *Bledsoe*, 501 F.3d at 504).

### A.   The Amended Complaint Fails to Identify the Time, Place, and Content of a Single Alleged Misrepresentation by UPG

Contrary to his pleading obligations, the bulk of Kreipke's allegations against UPG in the Amended Complaint simply seek relief based on use of the plural "Defendants" when asserting his legal claims. (First Amended Complaint at ¶¶ 93, 94, 97, 98, 101-105, 108-112, 120, 122). These references to "Defendants" do not satisfy the requirements of Rule 9(b). *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) ("A complaint 'may not rely upon blanket references to acts or omissions by all of the "defendants," for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.'")

9

(emphasis added) (citing *Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981)).

Kreipke's most specific allegation of fraud against UPG is that:   "Upon information and belief, Defendant UPG submitted bills to Medicare claiming them as services rendered by Relator's research (e.g. MRI costs) and other researchers' salaries."  (First Amended Complaint, at ¶ 34).   That's it.   Kreipke fails to allege when UPG submitted fraudulent bills to Medicare, who from UPG submitted the fraudulent bills, the content of any of the bills or misrepresentations from UPG to Medicare, or any discernible facts at all.

Kreipke's allegations in this respect also fail under Rule 9(b) because they rest solely, by his own admission, "upon information and belief."   "While fraud may be pled on information and belief when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the plaintiff must still set forth the factual basis for his belief." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 512 (6th Cir. 2007) (internal quotations and citation omitted).   Kreipke does not provide any information upon which his belief is based. *Id.* In fact, **of the 739 pages of exhibits attached to Kreipke's First Amended Complaint, not a single page even mentions UPG**.   (*See generally* Docket Entry 19).

In *Sanderson, supra,* the relator, formerly employed as an auditor of the defendant, charged that HCA and its corporate predecessors violated the FCA by

filing hospital cost reports that were in violation of Medicare and other federal programs from which defendants sought reimbursement.  The complaint did not refer to a specific fraudulent cost report or other claim filed with the government, nor did it detail who had filed such a claim or when it had been filed.  447 F.3d at 875.  Further, several of the allegations began with the phrase "upon information and belief."  *Id.* at 875-876.  The district court granted defendants' motion to dismiss the complaint, in part because fraudulent conduct based only upon information and belief was too "vague and cursory [to] rise to the heightened level of the requisite specificity under Rule 9(b)," and the complaint failed to "identify any applicable rule or regulation that was violated by HCA."  *Id.* at 876.  The Sixth Circuit affirmed the dismissal, finding that the relator failed to allege a FCA claim with the particularity required by Rule 9(b).  *Id.* at 877.  The Sixth Circuit highlighted that "there is no specific information about the filing of the claims themselves – nothing, that is, to alert the defendants to the precise misconduct with which they are charged and to protect defendants against spurious charges of immoral and fraudulent behavior."  *Id.*  The Court held that the heightened pleading requirements of Rule 9(b) are met by a complaint that sets out:

> (1) <u>precisely what statements</u> were made in <u>what documents or oral representations or what omissions were made</u>, and (2) <u>the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same</u>, and (3) <u>the content of such statements</u> and the manner in which they misled the

[government], and (4) what the defendants obtained as a consequence of the fraud.

*Sanderson,* 447 F.3d at 877 (emphasis added).  Accordingly, the Court upheld the dismissal because the relator "proved 'unable to identify a specific claim submitted directly to the United States by the defendant.' "  *Id.* at 879.

In fact, the relator in *Sanderson* actually alleged *more* facts against the defendants than Kreipke has alleged against UPG.  In *Sanderson,* the relator was employed by the defendants as an auditor, and his complaint set out a lengthy description of the allegedly unlawful accounting methodology used by defendants, and even identified some of the specific loans undertaken by the defendant for which the relator alleged claims of reimbursement of debt expenses were in violation of the FCA.  *Id.* at 877.  In the instant case, Kreipke has not even done that much.  He does not allege to have ever been employed by UPG, nor has he alleged any personal knowledge of a UPG practice that violates the FCA.  Similar to the relator in *Sanderson,* Kreipke's Amended Complaint "does not identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented to the government and relies instead exclusively on conclusory allegations of fraudulent billing."  *Id.* at 877.  As the *Sanderson* Court made clear, "Rule 9(b) does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply…that claims requesting illegal payments must have been submitted, <u>were</u>

likely submitted or should have been submitted to the Government." *Id.* (emphasis added). That is exactly what Kreipke has done in this case. For that reason, consistent with the *Sanderson* holding, Kreipke's Amended Complaint must be dismissed. *See also Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 564 (6th Cir. 2003) ("The failure to identify specific parties, contracts, or fraudulent acts requires dismissal.").

> ### B. The Amended Complaint Fails to Allege that UPG Submitted Any False Claim with the Required Intent

"[T]he requisite intent is the knowing presentation of what is known to be false as opposed to negligence or innocent mistake." *Mikes v. Straus*, 274 F.3d 687, 703 (2d Cir. 2001); *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999) ("violations of [federal] regulations are not fraud unless the violator knowingly lies to the government about them"). Further, the "notion of presenting a claim known to be false does not mean the claim is incorrect as a matter of proper accounting, but rather means it is a lie." *Mikes,* 274 F.3d at 703. The Amended Complaint is wholly devoid of any factual allegations that UPG knowingly lied about or misrepresented anything to the federal government. Kreipke does not point to a single law or rule that UPG allegedly violated. Without alleging which, if any, law was violated by UPG or when and if a false claim was actually submitted by UPG, it is impossible for Kreipke to make out a claim against UPG under the FCA. Kreipke's vague and conclusory allegations do

13

not sufficiently plead that UPG made any false claim to the government with the required intent. Therefore, the Amended Complaint must be dismissed.

## III. COUNT ONE FAILS BECAUSE KREIPKE DOES NOT ALLEGE ANY FALSE OR FRAUDULENT CLAIM WAS PRESENTED TO THE GOVERNMENT BY UPG

Count I seeks relief against Defendants under the theory that they knowingly presented false claims to the government. However, to sustain such a claim against UPG, Kreipke must plead with particularity that it "knowingly present[ed] or cause[d] to be presented a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). An action under this subsection requires that the alleged false or fraudulent claim was "presented" to the government. *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C*., 525 F.3d 439, 445 (6th Cir. 2008). "A plaintiff may not describe a[n alleged fraudulent billing] scheme in detail but then allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.* at 446.

Kreipke has not alleged that UPG presented any false or fraudulent claims to the government.[2] Although he describes and attaches some allegedly fraudulent

---

[2] The First Amended Complaint contains a passing allegation that UPG "in part attends to the billing for Defendant Wayne State University's Hospitals." (First Amended Complaint at ¶11) In ruling on a Motion to Dismiss, the Court can take judicial notice of public records showing that an allegation is untrue. *Overall v. Ascension Health*, 13-11396, 2014 WL 2448492 at *6-7 (E.D. Mich. May 13,

grant submissions by WSU, there are no specific allegations made against UPG in this regard.  Not a single page of Kreipke's exhibits even mentions UPG.  Nor does Kreipke describe any action taken by UPG based on his personal knowledge (indeed, Kreipke specifically states that the only targeted allegation against UPG rests upon "information and belief").  For this reason, too, Count I of Kreipke's First Amended Complaint must be dismissed against UPG.  *Marlar, supra* at 546. (claim was properly dismissed where relator had not pleaded any facts that the alleged false claims were in fact submitted to the government and instead relied "upon information and belief.").

## IV.   COUNT TWO FAILS BECAUSE KREIPKE DOES NOT ALLEGE THAT UPG MADE A FALSE RECORD OR STATEMENT MATERIAL TO A FALSE OR FRAUDULENT CLAIM

Count II seeks relief under the theory that Defendants made or used false or fraudulent statements to obtain government funds.  To sustain this claim, Kreipke must plead with particularity that UPG "knowingly ma[de], use[d], or cause[d] to

---

2014) (Cohn, J.) (Ex. A).  First, while it is widely-known that WSU operates a medical school, Kreipke does not and cannot allege that WSU bills Medicare for medical services.  Indeed, WSU does not even have a Medicare billing number, a fact that can be proven from a search on this government source. https://npiregistry.cms.hhs.gov/NPPESRegistry/NPIRegistryHome.do.   Second, WSU does not <u>have</u> hospitals.  Although it is widely-known that many WSU medical school teaching faculty separately practice medicine at the Detroit Medical Center, the DMC is a privately-owned corporation (owned by VHS of Michigan). http://www.dleg.state.mi.us/bcs_corp/image.asp?FILE_TYPE=ELF&FILE_NAME=D201105\2011136\E0134426.TIF.   As Kreipke admits, WSU is a publicly-funded state university.  (First Amended Complaint at ¶12).

be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). To satisfy Rule 9(b) scrutiny of a claim under this subsection, a "relator must provide sufficient details regarding the time, place and content of [the defendant]'s allege false statements, [the defendant]'s claim for payment from the government, and the manner in which the false statement induced the government to make a claimed payment to" the defendant. *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co*., 532 F.3d 496, 504 (6th Cir. 2008) (affirming Judge Cohn's dismissal of plaintiff's FCA claims under Rule 9(b)). Additionally, a relator must specifically identify the claims for payment that were paid by the United States as a result of the allegedly false statements or records. *Id.* at 506 (affirming dismissal where relator failed to allege specific details of claims for payment that were submitted to government as part of defendant's alleged fraudulent scheme).

In this respect, Kreipke's Amended Complaint fails to allege any particular false statements made by UPG, when they were made, who made them, or the content of the statements. Additionally, the Amended Complaint lacks allegations of any actual claims for payment submitted by UPG. Bare-bones allegations about submitting false claims, devoid of any particularized facts, are insufficient as a matter of law. *Snapp*, 552 F.3d at 504-05; *See also U.S. ex rel. Dennis v. Health Mgmt. Associates, Inc.,* 3:09-CV-00484, 2013 WL 146048 (M.D. Tenn. Jan. 14,

2013) (Ex. B) (dismissing claim under this subsection for failing to provide sufficient detail to support the relator's claim regarding the knowing fabrication or use of a false record or statement that was used in support of a false or fraudulent claim). For these reasons too, the Court should dismiss Count II against UPG.

## V.   COUNT THREE FAILS BECAUSE KREIPKE FAILS TO PLEAD THE ELEMENTS OF A CONSPIRACY

Count III claims that Defendants conspired to defraud the government of funds for scientific grants and research. To sustain this claim, Kreipke was required to plead with particularity that UPG conspired to commit a violation of another section of the Act. 31 U.S.C. § 3729(a)(1)(C). To establish a conspiracy under Section 3729(a)(1)(C), a plaintiff must show: (1) there was a single plan to get a false claim paid, (2) the alleged coconspirators shared in the general conspiratorial objective to get a false claim paid, and (3) one or more conspirators performed an overt act in furtherance of the conspiracy to get a false claim paid. *U.S. ex rel. Howard v. Lockheed Martin Corp*., 499 F. Supp. 2d 972, 980 (S.D. Ohio 2007). As with Kreipke's underlying claims brought under the FCA, Rule 9(b)'s heightened pleading standard applies to FCA claims of conspiracy to defraud the Government. *See e.g*., *Winkler, supra,* 957 F. Supp. 2d at 876 (dismissing FCA conspiracy claim because the "Complaint only mentions the conspiracy provision in the title of one-count and never pleads even the bare bones facts, let alone the specific facts, that are required under the statute to state a conspiracy claim, such

17

as who conspired to violate subsections (A) or (B) or what acts were taken in furtherance of the conspiracy and when.")

Several arguments dispose of Kreipke's conspiracy claim under the FCA. First, Kreipke's failure to sufficiently plead a violation by UPG of another section of the FCA necessitates a finding that he failed to plead a conspiracy to violate those sections. *Winkler,* 957 F. Supp. 2d at 876. That reason alone compels dismissal of Count III against UPG.

Second, Kreipke fails to plead any facts showing the existence of an agreement between UPG and WSU, or UPG and anyone else, to defraud the government. Consistent with Kreipke's other claims against UPG, he does not allege any facts supporting the claim and includes only boilerplate recitations of the statutory requirements against "Defendants." *Wilkins ex rel. U.S. v. State of Ohio*, 885 F. Supp. 1055, 1063 (S.D. Ohio 1995) (dismissing FCA conspiracy claim where "Plaintiff alleges in conclusory terms that the defendants conspired to defraud the United States, but has pleaded no facts showing the existence of an agreement between two or more of the defendants to defraud the government."). Allegations of a mere ongoing business relationship are insufficient without a demonstration of agreements or understandings to commit fraud. *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1098 (D.C. Cir. 2008).

Kreipke also fails to allege any supporting facts showing when, where, or how the alleged conspiracy occurred. *See e.g. Winkler, supra,* 957 F. Supp. 2d at 876 (dismissing conspiracy claims because "Under Rule 9(b), <u>general allegations of a conspiracy, without supporting facts to show when, where or how the alleged conspiracy occurred, amount to only a legal conclusion and are insufficient to state a cause of action.</u>") (emphasis added); *Dennis,* 2013 WL 146048 at *17 (M.D. Tenn. Jan. 14, 2013) (Ex. B) (same). For that reason, too, Kreipke's conspiracy claim fails as a matter of law.

Finally, Kreipke's First Amended Complaint lacks any allegation that UPG undertook an overt act in furtherance of a conspiracy. The pleadings contain no such allegation at all. For all of these reasons, Count III must be dismissed.

## VI.    COUNT FOUR FAILS BECAUSE KREIPKE DOES NOT ALLEGE THE ELEMENTS OF A REVERSE FALSE CLAIM AGAINST UPG

Count IV claims that Defendants failed to return government funds they knowingly obtained. To sustain a 'reverse' false claim, Kreipke must show (1) that the Defendant made, used or caused to be used a statement or record to conceal, avoid or decrease an obligation to the United States; (2) that the statement or record was false or fraudulent; (3) that the Defendant knew the statement or record was false or fraudulent; and (4) that the Defendant made a false record or statement at a time that the defendant owed to the government an obligation sufficiently certain to give rise to an action of debt at common law. *United States ex rel.*

*Augustine v. Century Health Servs.*, 136 F. Supp. 2d 876, 888 (M.D. Tenn. 2000)

(citing *Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc.,* 190 F.3d 729, 737 (6th Cir.

1999)); 31 U.S.C. § 3729(a)(1)(G).   A claim under this provision is called a

"reverse" false claim because the action of the defendant results not in improper

payment to the defendant from the government, but rather no payment (or reduced

payment) to the government when payment is otherwise obligated.   *U.S. ex rel.*

*Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003).

A cause of action under § 3729(a)(7) is also subject to the heightened

pleading requirement of Rule 9(b).  *Id.* at 529-30.  That requires the relator to plead

"[t]he 'time, place and contents of the false representations, as well as the identity

of the person making the misrepresentation and what [that person] obtained

thereby.'"  *Id.* at 329 (citation omitted).

Kreipke's only allegations against UPG in this regard are his nonspecific

assertions that "Defendants were aware that they had received overpayments from

the United States Government…[and] Defendant failed, and/or refused, to return

the funds to the United States Government." (Docket Entry 19, First Amended

Complaint at ¶¶ 110-112).  Kreipke fails to provide any specifics regarding any

overpayment, or any payment at all for that matter, that UPG received from the

Government that it was required to return.  Likewise, Kreipke fails to identify what

fraudulent record or statement UPG made that caused them to avoid or decrease an

20

obligation to pay the government, who made such a record or statement, when it was made, where it was made, or its contents.  Nowhere in the First Amended Complaint does he allege any obligation UPG owed to the government that UPG sought to conceal or avoid. As a result, Kreipke has failed to allege a cause of action for a "reverse" false claim under § 3729(a)(1)(G) with the specificity required by Rule 9(b).  For this reason, and those explained above, the Court should dismiss Count IV as a matter of law.  *See e.g. Dennis, supra,* 2013 WL 146048 at *18 (Ex. B) (dismissing reverse FCA claim for failure to plead any specific facts beyond boilerplate recitations of statutory language).

## VII.  COUNT FIVE FAILS BECAUSE KREIPKE DOES NOT ALLEGE HE WAS AN EMPLOYEE, CONTRACTOR, OR AGENT OF UPG AND THERE IS NO ALLEGATION THAT UPG TOOK ANY RETALIATORY ACTION AGAINST KREIPKE

To sustain his claim under Section 3730(h), Kreipke must show that (1) he engaged in a protected activity; (2) his employer knew that he engaged in the protected activity; and (3) his employer discharged or otherwise discriminated against him as a result of the protected activity.  *Yuhasz*, 341 F.3d at 566.  Relators must plead facts "which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government."  *Id.* (quoting *United States ex. rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996)).

Kreipke has not sufficiently pleaded any of the required elements against UPG.  His First Amended Complaint does not allege that he notified UPG of any of his complaints, whether or not those complaints even rise to the level of protected activity (which they do not).  Similarly, Kreipke does not allege that UPG knew about his protected activity.

Further, this section of the FCA provides relief from retaliatory actions for any "employee, contractor, or agent…" 31 U.S.C. § 3730(h)(1).  Nowhere in Kreipke's First Amended Complaint does he allege, nor could he, that he was an employee, contractor, or agent of UPG.  For this reason, Kreipke is not entitled to any relief from UPG under this section of the FCA.  *Id.*

Lastly, UPG did not take any retaliatory action against Kreipke.  Kreipke states that "Defendants wrongfully terminated Plaintiff-Relator in 2012, based on falsified data and without giving him his due process rights." (Docket Entry 19, First Amended Complaint at ¶ 120).  However, Kreipke does not allege to have been employed by UPG and he later clarifies that he was terminated by WSU.  (Id. at ¶ 127).  Additionally, the notice of termination that Kreipke attached to the Complaint does not mention UPG, is on WSU letterhead, and makes clear that "your employment with Wayne State University is to be terminated immediately." (First Amended Complaint, Docket Entry 19-4, Exhibit U).  For all these reasons, Count V in Kreipke's First Amended Complaint must be dismissed.

22

## VIII. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE FURTHER AMENDMENT WOULD BE FUTILE

Generally, leave to amend is freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  However, leave to amend may be denied where the amendment would be futile.  *Yuhasz, supra,* 341 F.3d at 569.  Kreipke should not be permitted to further amend his claims against UPG.  Kreipke's original Complaint was filed more than 20 months ago, thus he has had more than an adequate opportunity to cure the deficiencies.  Also, he has already amended his Complaint once, and he failed to cure any of the deficiencies in his claims against UPG.  Lastly, as exemplified by his previous amendment, any further amendment would be futile because Kreipke does not possess any additional information regarding UPG that could allow his Complaint to allege FCA violations against UPG with sufficient particularity.

Importantly, Kreipke's allegations against UPG are actually less-specific in the First Amended Complaint than the original Complaint.  For example, in his original Complaint, Kreipke made the following allegations against UPG:

32.   For several quarters during which Relator was 100% effort committed to research grants, Defendant UPG submitted bills to Medicare services rendered by Relator and other researchers who were on his grants, through Defendant UPG.

33.  This necessarily led to the overpayment of clinical salaries based on multiple sources of effort (i.e., 1) effort on grants, 2) University reporting of teaching effort, and 3) effort of time billed to Medicare); the net result of which was that the federal government was double or

triple billed and was fraudulently forced to overpay these researchers/faculty from federal funds; as a result, all of the Medicare billings by Defendants WSU and UPG under Relator's UPIN number, or those of the other researchers/faculty on these grants, during those quarters, are false claims for overpayment.

34.  Relator, **based on his own personal experience**, believes this is a systemic problem at WSU and UPG.

(Docket Entry 1, Complaint at ¶¶ 32-34) (emphasis added).  In his First Amended

Complaint, based on the same allegation, Kreipke makes it clear that he has no

actual knowledge of actions taken by UPG.  The same section in his First

Amended Complaint states:

34.  **Upon information and belief**, Defendant UPG submitted bills to Medicare claiming them as services rendered by Relator's research (e.g. MRI costs) and other researchers' salaries.  This is despite the fact that Relator's grants did not involve human subjects.

35.   This necessarily led to the overpayment of clinical costs, including but not limited to salary and research-related costs.

36.  This also necessarily led to the overpayments of clinical costs based on multiple sources of reimbursement (e.g. NIH grants and Medicare).

37.   The net result of these schemes was that the United States Government was double-billed and fraudulently forced to overpay these individual researchers, and research costs, from federal funds.

38.   Thus, many of the Medicare billings by Defendants under the researchers on these grants are false claims for overpayment.

39.  Relator, **upon information and belief**, asserts this is a systemic problem at WSU and UPG.

(Docket Entry 19, First Amended Complaint at ¶¶ 34-39).  By replacing the phrase

"based on his own personal experience," with the phrase "upon information and

belief," Kreipke has conceded that he does not have any personal knowledge or "experience" regarding UPG.  For this reason, further amendment of the Complaint would be futile and dismissal with prejudice is appropriate.  *See Yuhasz, supra,* 341 F.3d at 569 (holding that further amendment of the plaintiff's FCA complaint would be futile where plaintiff possesses no further facts to plead).

## CONCLUSION

For the foregoing reasons, Defendant University Physician Group respectfully requests that this Honorable Court grant its Motion to Dismiss Plaintiff's First Amended Complaint, dismiss the Complaint with prejudice, and award to UPG its costs, attorney's fees and all other relief the Court deems just and appropriate.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN

/s/ Jonathon A.  Rabin
Jonathon Rabin (P57145)
Bradley M.  Taormina (P76629)
Attorneys for Defendant UPG
201 West Big Beaver Road, Suite 1200
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2014, I electronically filed the foregoing document and this Certificate of Service with the Clerk of the Court using the ECF system, which will send notification of such filing to attorneys of record at their registered e-mail addresses.

/s/ Jonathon A. Rabin
Jonathon A. Rabin
201 West Big Beaver Road, Suite 1200
Troy, MI  48084
(248) 740-7505
jrabin@hallrender.com

1