UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
ex rel. Christian Kreipke, and CHRISTIAN
KREIPKE, an individual,

    Plaintiffs,

v.

Case No. 12-14836
Hon: AVERN COHN

WAYNE STATE UNIVERSITY, and
UNIVERSITY PHYSICIAN GROUP,

    Defendants.

_____/

**MEMORANDUM AND ORDER**

**GRANTING IN PART AND DENYING IN PART
WAYNE STATE UNIVERSITY'S MOTION TO DISMISS AND FOR COSTS AND
ATTORNEYS FEES (Doc. 28)**

**AND GRANTING
UNIVERSITY PHYSICIAN GROUP'S MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT (Doc. 29)**

**AND DISMISSING CASE**

**I. INTRODUCTION**

    This is a False Claims Act (FCA) case, with additional retaliatory discharge and defamation claims under state law. Relator Christian Kreipke (Plaintiff) claims that Defendants Wayne State University (WSU) and University Physician Group (UPG) were

1

involved in a conspiracy whereby false claims and false documents were presented to the United States Government in order to receive payment for government sponsored reserach, in violation of the FCA, 31 U.S.C. §§ 3729, et seq. Under state law, Plaintiff claims that WSU improperly terminated him in retaliation for his refusal to violate the law, and that the President of WSU publicly defamed him. The President is not a named defendant.

The Amended Complaint is in seven counts: five under the FCA, and two under Michigan law. Counts I-III are against both WSU and UPG[1]:

**Count I:** False Claims Act: Presentation of False Claims, 31 U.S.C. § 3729(a)(1)(A)[2]
**Count II:** False Claims Act: Making or Using a False Record or Statement, 31 U.S.C. § 3729(a)(1)(B)
**Count III:** False Claims Act: Conspiracy to Defraud, 31 U.S.C. § 3729(a)(1)(C)

Counts IV, V, and VII are against WSU only:

**Count IV:** False Claims Act: Reverse False Claims Act, 31 U.S.C. § 3729(a)(1)(G)
**Count V:** False Claims Act: Retaliation, 31 U.S.C. § 3730(h)
**Count VII:** Defamation as to WSU under MCL 600.2911, et seq.

As relief, Plaintiff seeks treble damages and civil penalties under the FCA, reasonable attorneys fees, costs, and expenses, injunctive relief to prevent further FCA violations, and that Defendant be ordered to take steps to restore Plaintiff's reputation in the scientific

---

[1] In Plaintiff's Amended Complaint, Plaintiff brought all seven charges against both UPG and WSU. However, Plaintiff's now states that he will no longer pursue Counts IV to VII against UPG (Doc. 36 at 3), and voluntarily dismisses Count VI, Retaliatory Discharge in Violation of Public Policy (Doc. 35 at 4).

[2] In Plaintiff's Amended Complaint, Plaintiff relied on outdated citations to the FCA. For example, Plaintiff cites to 31 U.S.C. § 3729(a)(1) for its allegations relating to the presentation of false claims. However, the FCA was amended in 2009, and the new provision is properly cited at § 3729(a)(1)(A).

community.

Now before the Court is WSU's Motion to Dismiss and for Costs and Attorneys Fees (Doc. 28), and UPG's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 29). For the reasons that follow, WSU's Motion is GRANTED IN PART AND DENIED IN PART and UPG's Motion is GRANTED.

## II. BACKGROUND

### A.

Because the Court addresses Plaintiff's claims in response to Defendants' motions to dismiss, the facts as alleged in the Amended Complaint (Doc. 19) are accepted as true and summarized below.

### B.

Plaintiff is a citizen of the United States and a resident of the State of Michigan. WSU is a state-funded university, whose School of Medicine is a major recipient of National Institutes of Health (NIH) funds in the form of federal grants and contracts, and receives substantial research funding from the United States government. UPG, a domestic non-profit corporation, is a closed-group physician practice serving WSU that, among other functions, attends to the billing for WSU's hospitals. Plaintiff was an Assistant Professor at WSU from 2008 until his termination in 2012. In 2010, Plaintiff was selected to serve on a committee responsible for auditing and investigating research grant procurement by WSU. (Doc. 19, ¶ 7, 9)

### C.

With regard to WSU, Plaintiff claims that WSU has engaged in systemic fraud, taking

part in a number of schemes in order to maximize reimbursement from the United States government for various federal grants and contracts. The various schemes are summarized below:

- Inflating costs associated with particular grants in initial budget requests
- Inflating the percent of effort spent by personnel on particular grants, and allowing "Ghost Employees" to draw salaries from grants on which they were not working
- Inflating researchers' salaries in grant applications and disregarding government-mandated salary caps
- Omitting the time WSU researchers spent performing clinical, teaching, and service duties from grant application and reporting materials
- Wrongfully using federal funds to purchase equipment without reporting it to the United States government or refunding the government for wrongfully paid equipment purchases
- Inflating costs for animal care, surgical and histological supplies, and equipment maintenance

While serving on WSU's internal audit/investigation committee, Plaintiff found these abuses to be prevalent in WSU's research culture. Plaintiff claims that, despite being aware of the problem, WSU did nothing to correct it.

**D.**

With regard to UPG, Plaintiff claims that UPG was also engaged in systemic fraud. Specifically, Plaintiff says that WSU advised its employees that they were not required to report "UPG time and income" associated with a particular grant. In addition, Plaintiff says that UPG submitted bills to Medicare for services rendered by Plaintiff's research, despite the fact that Plaintiff's grants did not involve human subjects.

**E.**

In March 2014, the United States declined to intervene in the case and the Complaint was unsealed and made public. (Doc. 17, 18) In response to this, the President of WSU authored a commentary that was published in the Detroit Free Press in April 2014.

In the article, the President of WSU publicly addressed Plaintiff's case, stating that it was without merit and noting that Plaintiff had himself been investigated by the Federal Office of Research Oversight. Plaintiff demanded that WSU retract the disparaging statements; no retraction was issued. Plaintiff says that he has suffered severe economic and noneconomic damages as a result of the President's public statements.

**F.**

Following the unsealing of the Complaint, Plaintiff filed an Amended Complaint (Doc. 19), to which UPG and WSU filed the Motions to Dismiss.

### III. LEGAL STANDARDS

### A. Pleading Standard Under Rule 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

### B. Elements of a *Qui Tam* Claim

The FCA is an anti-fraud statute prohibiting the knowing submission of false or fraudulent claims to the federal government. Under the FCA, liability may be imposed when

> (1) a person presents, or causes to be presented, a claim for payment or approval; (2) the claim is false or fraudulent; and (3) the person's acts are undertaken "knowingly," i.e., with actual knowledge of the information, or with deliberate ignorance or reckless disregard for the truth or falsity of the claim.

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (*Bledsoe I*) (citing § 3729(a)(1), (b)). Liability is also imposed for conspiracy to defraud the Government. § 3729(a)(1)(C). In addition, there is liability for a "reverse false claim," where a person knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. § 3729(a)(1)(G); *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011).

### C. Pleading Standard Under Rule 9(b)

"Because the basis for a *qui tam* action is *fraud* in the filing of claims against the government, we have held, as have other circuit courts in FCA cases, that allegations in the complaint must comply with the particularity requirements of Federal Rule of Civil

6

Procedure 9(b).") *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876-77 (6th Cir. 2006); *see also Chesbrough*, 655 F.3d at 466 ("Complaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity because 'defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts.'") (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)).

The purpose of Rule 9(b) is "to alert defendants 'as to the particulars of their alleged misconduct' so that they may respond." *Chesbrough*, 655 F.3d at 466 (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) (*Bledsoe II*). "To plead fraud with particularity, the plaintiff must allege (1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury." *Id.* at 467 (quoting *Bledsoe II*, 501 F.3d at 504). The *qui tam* complaint must therefore "identify specific parties, contracts, or fraudulent acts," and "may not rely upon blanket references to acts or omissions by all of the 'defendants,'" *Bledsoe I,* 342 F.3d at 643 (citing *Yuhasz*, 341 F.3d at 564). Although "fraud may be pled on information and belief when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the plaintiff must still set forth the factual basis for his belief." *Bledsoe II*, 501 F.3d at 512 (quoting *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 454 (5th Cir. 2005)). Thus, Rule 9(b) imposes a heightened pleading standard, "designed to prevent 'fishing expeditions,' to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters." *Id. at 467* (citing *Bledsoe II*, 501 F.3d at 503 n.11; *United States ex rel. SNAPP, Inc. v. Ford Motor Company*, 532 F.3d 496, 504 (6th Cir. 2008)).

## IV. DISCUSSION

### A. UPG's Motion to Dismiss

Generally, UPG argues that the Amended Complaint fails to plead any claim with the specificity required under Rule 9(b). UPG says that Plaintiff has failed to identify the time, place, and content of even a single alleged misrepresentation by UPG. UPG further notes that the most specific allegation of fraud by UPG is based on Plaintiff's "information and belief"; however, the Amended Complaint provides no information upon which this belief is based. In addition, not a single page of Plaintiff's 739-page attached exhibits mentions UPG; nor does Plaintiff allege that UPG submitted any false claim with the intent required under the FCA.

#### *1. FCA Counts I and II*

Counts I and II of the Amended Complaint assert the presentation of false claims, § 3729(a)(1)(A), and the making or using of a false record or statement, § 3729(a)(1)(B), respectively. In essence, Plaintiff alleges that UPG has engaged in systemic misrepresentation in order to secure payment for false or fraudulent claims from the Government.

As noted, pleading under the FCA must meet stringent particularity requirements. Here, Plaintiff has not alleged that UPG presented any false claim to the government. Throughout the Amended Complaint, Plaintiff alleges very generally that the "Defendants" engaged in fraudulent activity. Such blanket references are insufficient under Rule 9(b). *Bledsoe I,* 342 F.3d at 643.

Plaintiff's most specific claim with respect to UPG alleges that UPG submitted bills

to Medicare for MRI tests that did not involve human subjects. However, this was based only upon Plaintiff's "information and belief," and Plaintiff provides no factual basis for this belief. Plaintiff attaches exhibits that supposedly show evidence of "grossly inflated" MRI costs as examples of UPG's misconduct (Doc. 19 at 13-14). However, none of these exhibits refer to UPG or otherwise indicate that these costs were billed to Medicare. (Doc. 19, Ex. I; Ex. J at 5, 10). Accordingly, Counts I and II fail the particularity requirements of Rule 9(b).

### *2. FCA Count III*

In Count III, brought under § 3729(a)(1)(C), Plaintiff claims that UPG conspired with WSU to defraud the government of funds for specific grants and research. Here too, Plaintiff cannot succeed.

As with Plaintiff's other claims under the FCA, Plaintiff must plead with particularity that UPG conspired to commit a violation of the FCA. To establish conspiracy under the FCA, a plaintiff must show that "(1) there was a single plan to get a false claim paid, (2) the alleged coconspirators shared in the general conspiratorial objective to get a false claim paid, and (3) one or more conspirators performed an overt act in furtherance of the conspiracy to get a false claim paid." *U.S. ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 980 (S.D. Ohio 2007); *see also United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991) (applying these criteria from the civil conspiracy context to the FCA).

Plaintiff fails to allege that UPG conspired with sufficient particularity. In the Amended Complaint, Plaintiff pleads no specific facts showing the existence of an agreement or plan between UPG and WSU to defraud the government. Nor are there any purported facts supporting the existence of any shared objective, nor any specific act in

furtherance. Plaintiff offers no support, other than generalized statements that the "Defendants" conspired with one another. Plaintiff's allegation of conspiracy therefore fails to state a claim under the FCA.

### *3.*

With respect to UPG, Plaintiff's Amended Complaint fails to state a claim for relief sufficient to survive a motion to dismiss under Rule 12(b)(6), and further fails the particularity requirements of Rule 9(b). UPG's motion has therefore been granted.

### B. WSU's Motion to Dismiss

WSU argues several reasons for dismissal. First, WSU says that Plaintiff's claims under the FCA are barred because WSU is not a "person" under the Act. Second, WSU says that, even if it is subject to liability under the FCA, Plaintiff's claims fail for lack of particularity under Rule 9(b). Third, WSU says that Plaintiff's state law claims are barred under the Michigan Governmental Tort Liability Act (GTLA). Finally, WSU says that all of Plaintiff's claims are barred by Eleventh Amendment Immunity.

WSU's reasons for dismissal are persuasive. Because the analysis of whether WSU is a "person" under the FCA is coextensive with the Eleventh Amendment "arm of the state" analysis, and because Eleventh Amendment immunity bars all Plaintiff's claims against WSU, Plaintiff cannot prevail.

### *1. FCA Counts I - V*

The FCA imposes civil liability upon "any *person*" who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States Government. 31 U.S.C. § 3729(a)(1)(A) (emphasis added). For

Plaintiff to plead a cause of action under the FCA, he must establish that WSU is a "person" under the statute.

In *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, the United States Supreme Court held that under the FCA, a state or a state agency is not a "person" subject to liability. 529 U.S. 765, 787-88 (2000), *id.* at 780 ("We must apply to this text our longstanding interpretive presumption that 'person' does not include the sovereign."). The Supreme Court came to this conclusion as a matter of statutory interpretation, construing the statute "to avoid difficult constitutional questions" of Eleventh Amendment sovereign immunity. *Id.* at 787. Although the Supreme Court did not reach the question of "whether an action in federal court by a *qui tam* relator against a State would run afoul of the *Eleventh Amendment*," *id.* at 787 (emphasis added), the Supreme Court noted the "virtual coincidence of scope" between a sovereign's liability under the FCA and the Eleventh Amendment. *Id.* at 780. Thus, whether a state or state agency is subject to liability under the FCA is coextensive with—albeit separate from—whether the agency enjoys sovereign immunity under the Eleventh Amendment.

Based on *Stevens*, federal courts across the country have dismissed FCA claims against state colleges and universities and their governing bodies, or affirmed such dismissal, reasoning that they are "arms of the state" and therefore not "persons" under the FCA. *See, e.g.*, *United States v. Solinger*, 457 F. Supp. 2d 743, 755 (W.D. Ky. 2006) (holding that "the University of Louisville is a Kentucky state agency to which sovereign immunity applies" and is therefore not a "person" under the FCA); *U.S. ex rel. Adrian v. Regents of Univ. of California*, 363 F.3d 398, 402 (5th Cir. 2004) (affirming dismissal of FCA claims against the University of California Board of Regents because it is a state

11

agency and "the FCA does not provide a cause of action against state agencies").

In the Sixth Circuit, "[t]o determine whether an entity is an arm of the state, courts have traditionally looked to several factors, including: (1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding." *S.J. v. Hamilton County*, 374 F.3d 416, 420 (6th Cir. 2004). With respect to universities, courts have also looked to factors such as "whether payment of judgment would be out of state funds, whether the institution was created by statute or state constitution, to what extent the institution is supported by state funds, and what degree of independence the officers of the institution have." *Williams v. Michigan State Univ.*, 1:93-CV-72, 1994 WL 617272 (W.D. Mich. Jan. 3, 1994) (citing *Estate of Ritter v. University of Mich.*, 851 F.2d 846 (6th Cir. 1988)).

Under this analysis, WSU is properly considered an "arm of the state." WSU is a public university created by the Michigan Constitution. Mich. Const. art. VIII, § 5. It receives funding from the State and is accountable to the State for income and expenditures. *Id.* at § 4. WSU is established and maintained under State law, M.C.L. § 390.641, and it receives funds directly from the State's general fund. M.C.L. § 390.649. Most importantly, any judgment against WSU will be paid out of the state's tax revenues. M.C.L. § 600.6095; *cf. U.S. ex rel. Moore v. Univ. of Michigan*, 860 F. Supp. 400, 403 (E.D. Mich. 1994) (noting that under § 600.6095, "any judgment against the University will be paid out of the State's tax revenues"). In addition, federal courts in the Sixth Circuit have consistently held that WSU is an "arm of the state" under an Eleventh Amendment analysis. *See, e.g.*, *Johnson v. Wayne State Univ.*, 06-13636, 2006 WL 3446237, at *3 (E.D. Mich.

Nov. 27, 2006) (holding that because WSU is a state university, it is "an 'arm of the state' entitled to Eleventh Amendment immunity"); *Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 973, 976 (E.D. Mich. 1998) (holding that WSU is an "arm or alter ego" of the state because the plaintiff's claims "would require payments from the State's coffers").

Because WSU is an "arm of the state," it cannot be a "person" under the FCA. Counts I - V therefore fail to state a plausible claim for relief.

### *2. Count VII, Defamation Under State Law*

Plaintiff conflates the President of WSU with WSU itself. Assuming WSU is somehow liable for the President's statement, the Court will consider Plaintiff's claim of defamation as to WSU.

However, because WSU is an "arm of the state," its immunity extends to claims under state law as well. *See VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012) ("The Eleventh Amendment to the U.S. Constitution grants immunity to states from litigation on state law claims in federal court."). Thus, Plaintiff's defamation claim against WSU cannot prevail.

### V. CONCLUSION

For the above reasons, WSU's Motion to Dismiss and for Costs and Attorneys Fees has been granted in part and denied in part,[3] and UPG's Motion to Dismiss Plaintiff's First Amended Complaint has been granted. This case is DISMISSED.

SO ORDERED.

---

[3] WSU's Motion to Dismiss (Doc. 28) additionally asks for costs and attorneys fees; however, it provides no arguments in support. This request is therefore DENIED.

        S/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated: November 13, 2014

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 13, 2014, by electronic and/or ordinary mail.

        S/Sakne Chami
        Case Manager, (313) 234-5160