# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed:  December 04, 2015

Mr. Shereef Hadi Akeel
Mr. William Reed Thomas
Akeel & Valentine
888 W. Big Beaver Road, Suite 910
Troy, MI 48084

Mr. K. Scott Hamilton
Mr. Kenneth J. McIntyre
Mr. Daniel J. Phillips
Ms. Kathryn S. Wood
Dickinson Wright
500 Woodward Avenue, Suite 4000
Detroit, MI 48226

>          Re: Case No. 15-1139*, Kreipke, et al v. Wayne State University, et al*
>               Originating Case No. : 2:12-cv-14836

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered
in conformity with Rule 36, Federal Rules of Appellate Procedure.

>                    Yours very truly,
>
>                    Deborah S. Hunt, Clerk
>
>
>                    Cathryn Lovely
>                    Deputy Clerk

cc:  Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0285p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

CHRISTIAN KREIPKE,

*Plaintiff-Appellant,*

*v.*

No. 15-1139

WAYNE STATE UNIVERSITY,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-14836—Avern Cohn, District Judge.

Argued:  October 8, 2015

Decided and Filed:  December 4, 2015

Before:  ROGERS and DONALD, Circuit Judges; ROSE, District Judge.[*]

———————————

### COUNSEL

**ARGUED:**  William R. Thomas, AKEEL & VALENTINE, PLC, Troy, Michigan, for Appellant.  Kenneth J. McIntyre, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellee.  **ON BRIEF:**  William R. Thomas, Shereef H. Akeel, AKEEL & VALENTINE, PLC, Troy, Michigan, for Appellant.  Kenneth J. McIntyre, K. Scott Hamilton, Kathryn S. Wood, Daniel J. Phillips, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellee.

———————————

[*]The Honorable Judge Thomas M. Rose, District Judge for the Southern District of Ohio, sitting by designation.

1

_____

**OPINION**

_____

ROSE, District Judge.  This is a qui tam action brought by Dr. Christian Kreipke ("Kreipke"), a former Assistant Professor at Wayne State University ("WSU") in Detroit, Michigan, for alleged violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and defamation under Michigan law.  Kreipke alleges that WSU engaged in a fraudulent scheme to inflate the amount of funding that it received from the federal government for research grants and that he was fired in retaliation for complaining about the scheme to university officials and refusing to participate in it.  The district court granted WSU's motion to dismiss all of the claims against it on the grounds that WSU was not a "person" under the FCA and was entitled to sovereign immunity as an "arm of the state" under the Eleventh Amendment.  The district court denied Kreipke's request to amend his complaint because Kreipke failed to file a formal motion to amend and, in any event, the proposed amendment would have been futile.

On appeal, Kreipke challenges the district court's holding that WSU is not a "person" subject to liability under the FCA, its holding that WSU is entitled to Eleventh Amendment immunity, and its denial of Kreipke's request for leave to amend.  For the reasons discussed below, we affirm the judgment of the district court.

I.     **BACKGROUND**

A.     **Kreipke's First Amended Complaint**

Appellant, Dr. Christian Kreipke, was an Assistant Professor at WSU from 2008 until his termination in 2012. R. 19 at PAGEID# 663.  Kreipke personally began working on federal research grants in 2004. R. 19-1 at PAGEID# 691-92.  In 2011, while employed at WSU, Kreipke was appointed to a committee responsible for auditing and investigating WSU's research grants. R. 19 at PAGEID# 662.  As a result of his own work on research grants and involvement with WSU's audit committee, Kreipke discovered what he believed to be a fraudulent scheme used by WSU to artificially increase the funding that it receives from the government. R. 19 at PAGEID# 661-62.  Kreipke claims that WSU terminated his employment

in retaliation for his complaining about this scheme and refusing to participate in it. *Id.* at PAGEID# 679.

On October 31, 2012, Kreipke filed a qui tam complaint under the False Claims Act against WSU and University Physicians Group ("UPG"),[1] a physician practice serving WSU that, among other functions, manages the billing for WSU's hospitals. R. 1 at PAGEID# 1-23. On March 17, 2014, the United States provided notice that it would not be intervening in Kreipke's action under § 3730(b)(2) of the FCA. R. 17 at PAGEID# 653-57. On June 5, 2014, Kreipke filed the First Amended Complaint—the complaint at issue on this appeal. R. 19.

In the First Amended Complaint, Kreipke alleged that WSU engaged in a deliberate scheme to defraud the federal government in order to inflate the funding that WSU receives for various federal grants and contracts. R. 19. Among other allegations, Kreipke alleges that WSU inflated the costs associated with grants in WSU's budget requests, inflated researchers' salaries and the amount of time that personnel allocated to working on grants, misappropriated federal funds to purchase equipment, and inflated the costs for other services and supplies. R. 19 at 6-12. Kreipke claims that he notified WSU of these alleged fraudulent practices, but WSU did nothing to correct them. R. 19 at 18, ¶ 70.

In March 2014, after the United States declined to intervene, Kreipke's complaint was unsealed and its allegations became public. In response to media reports about WSU's alleged fraud, M. Roy Wilson, WSU's President, authored a commentary in the Detroit Free Press. R. 19-5. Wilson wrote that, based on his review of the allegations reported in the media, he believed that Kreipke's claims were meritless. *Id.* Wilson added that Kreipke had been fired for his own research misconduct at WSU, and that the Federal Office of Research Oversight had conducted an earlier investigation into Kreipke's conduct that resulted in a 10-year ban on further grant funding to him by the Veterans Administration. *Id.* Kreipke alleges that Wilson's published comments were false and defamatory.

---

[1]The district court granted UPG's motion to dismiss all claims against it. (Doc. 49.) Kreipke did not appeal the dismissal of those claims.

No. 15-1139                     *Kreipke v. Wayne State Univ.*                    Page 4

Based on the above allegations, Kreipke asserted five claims under the FCA (Counts 1–5), a state law claim for retaliatory discharge (Count 6), and a defamation claim (Count 7) against WSU.  The specific counts alleged were:

(1)    Presentation of false claims in violation of 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act;

(2)    Making or using a false record or statement in violation of 31 U.S.C. § 3729(a)(2) of the False Claims Act;

(3)    Conspiracy to defraud under 31 U.S.C. § 3729(a)(3) of the False Claims Act;

(4)    A "Reverse False Claims Act Claim" for failing or refusing to return overpayments to the United States Government in violation of 31 U.S.C. §3729(a)(7);

(5)    Retaliation in violation of 31 U.S.C. § 3729(h) of the False Claims Act;

(6)    Retaliatory discharge in violation of public policy under Michigan law; and

(7)    Defamation under Mich. Comp. Laws § 600.2911, *et seq.*

R. 19 at 21-29.

WSU moved to dismiss all of the claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). R. 28, PAGEID# 1445-77.  Kreipke filed a response in opposition to WSU's motion to dismiss, which included a request for leave to file an amended complaint adding WSU's Board of Governors and President as defendants and, if necessary, greater specificity to his claims.  R. 35, PAGEID 1598-1601.  Kreipke attached his proposed amended complaint as Exhibit C to his response.

**B.    The District Court's Rulings**

The district court granted WSU's Motion to Dismiss and denied Kreipke's request for leave to file an amended complaint. R. 49.

No. 15-1139                    *Kreipke v. Wayne State Univ.*                    Page 5

1.      **WSU's Motion to Dismiss**

In its Motion to Dismiss, WSU made the following arguments for dismissal of Kreipke's claims:

(1)      Kreipke's claims under the FCA are barred because WSU is not a "person" subject to liability under the Act;

(2)      Kreipke's claims under the FCA fail for failure to plead fraud with particularity under Fed. R. Civ. P. 9(b);

(3)      Kreipke's state law claims for retaliation are barred under the Michigan Governmental Tort Liability Act ("GTLA"); and

(4)      All of Kreipke's claims against WSU are barred by the doctrine of sovereign immunity under the Eleventh Amendment.

Ruling in WSU's favor on all claims, the district court held that the question of whether an entity is a "person" subject to liability under the FCA is determined by applying the same analysis used to decide if an entity is an "arm of the state" entitled to Eleventh Amendment immunity.  R. 49 at 10 (citing *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000)).  The district court considered the factors of the "arm of the state" analysis set forth in *S.J. v. Hamilton County*, 374 F.3d 416, 420 (6th Cir. 2004), specifically (1) whether the state would be responsible for a judgment against the entity, (2) how state law defines the entity, (3) what degree of control the state maintains over the entity, and (4) the source of the entity's funding.  R. 49 at 12.  The district court noted that WSU is a public university created by and accountable to the State of Michigan under Article VIII of the Michigan Constitution, is established and maintained under Mich. Comp. Laws § 390.641, and receives funds directly from the State's general fund under Mich. Comp. Laws § 390.649.  *Id.*  The district court also placed significant weight on its finding that "any judgment against WSU will be paid out of the state's tax revenues."  *Id.* (citing M.C.L. § 600.6095).  The district court determined that, based on these factors, WSU is an arm of the State of Michigan entitled to Eleventh Amendment immunity, and therefore not a "person" subject to liability under the FCA.

The district court dismissed Kreipke's defamation claim on Eleventh Amendment immunity grounds based on the same analysis.  *Id.* at 13.  The district court did not consider the

No. 15-1139               *Kreipke v. Wayne State Univ.*               Page 6

claim for retaliatory discharge in violation of public policy (Count VI) because Kreipke voluntarily dismissed that claim in response to WSU's motion to dismiss. R. 35 at 4, n. 3.

### 2.     Kreipke's Request for Leave to Amend

Kreipke included a request for leave to amend in his response to WSU's Motion to Dismiss, but the district court did not rule on that request. Kreipke renewed his request by filing a Motion to Alter or Amend Judgment under Fed. R. Civ. P. 59(e), which asked the court to amend its judgment dismissing Kreipke's claims to grant him leave to file an amended complaint. R. 51.

The district court held that Kreipke was not entitled to relief under Rule 59(e), reasoning that such a motion is appropriate only where there has been (1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) a need to prevent manifest injustice. R. 54 at 3 (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). The district court held that its "purported failure to rule" on Kreipke's request for leave to amend did not constitute an error of law or create a manifest injustice. *Id.* at 3-4. The district court reasoned that there was no error of law because Fed. R. Civ. P. 7(b)(1) requires a party to file a motion to request a court order, which Kreipke did not do. *Id.* at 4. The district court reasoned that there was no manifest injustice because its dismissal of Kreipke's claims on the merits would have "effectively mooted" a properly filed motion for leave to amend, *i.e.*, a motion for leave to amend would have been futile. *Id.* at 4.

## II.     STANDARD OF REVIEW

This Court reviews "de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Rule 12(b)(6)." *Lukas v. McPeak*, 730 F.3d 635, 637 (6th Cir. 2013). The complaint must "contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Phil. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013)). In reviewing a motion to dismiss, the Court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the

[c]omplaint and are central to the claims contained therein." *Basset v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

The Court "may affirm the district court's dismissal of Plaintiffs' claims on any grounds, including those not relied on by the district court." *Zalusky v. United America Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

## III.  ANALYSIS

### A.    Test For Determining Whether An Entity Is A "Person" Under FCA

In reviewing the dismissal of Kreipke's claims, the first question is whether the district court applied the proper test to determine if WSU is subject to liability under the FCA.  The FCA imposes liability on "any person" who violates its provisions, but does not define the term "person" for all purposes under the Act.  *See* 31 U.S.C. § 3729(a)(1)(A)–(G); *Stevens*, 529 U.S. at 783–84 (noting that § 3733 of the FCA defines "person" strictly for purposes of identifying to whom the Attorney General may issue civil investigative demands).  Nor has the Supreme Court defined the term, although it has held that a "person" under the FCA does not include a state or state agency.  *Stevens*, 529 U.S. at 787-88.  Thus, if WSU is a state agency, it is not a person subject to liability under the FCA.

Which test we should apply to determine whether WSU is a state agency and therefore not a "person" under the FCA is a matter of first impression in this Circuit.  The circuits that have considered this issue have unanimously held that courts should apply the same test used to determine whether an entity is an "arm of the state" entitled to sovereign immunity under the Eleventh Amendment.  *See U.S. ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 602 (11th Cir. 2014) (joining the Fourth, Fifth, Ninth, and Tenth Circuits in adopting the "arm of the state" analysis under the Eleventh Amendment for purposes of the FCA).  These other circuits reached this conclusion based, in part, on the Supreme Court's observation in *Stevens* that the scope of the inquiry into whether an entity is a "person" under the FCA is virtually identical to the sovereign immunity inquiry under the Eleventh Amendment.  *Id.* at 601–02 (citing *Stevens*, 529 U.S. at 779–80).

Indeed, the Supreme Court has since underscored "the virtual coincidence of scope" between the two inquiries, *Stevens*, 529 U.S. at 780, by holding that, in contrast to states and state agencies, the term "person" under the FCA includes local governments and municipalities. *Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119, 134 (2003). The definition of a "person" under the FCA therefore parallels the limitations on sovereign immunity under the Eleventh Amendment, as Eleventh Amendment immunity extends to state and state agencies, but not to local governments and municipalities. In light of this similarity and consistent with the Supreme Court's guidance in *Stevens*, we also adopt the arm-of-the-state analysis under the Eleventh Amendment to determine whether an entity is a state agency excluded from liability under the FCA.

In *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005), we held that, to determine whether an entity is an "arm of the state," a court should consider the following factors:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Id.* at 359 (internal citations omitted). The first factor (the state's potential liability for a judgment) is "the foremost factor" and "it is the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in *that* case, that controls the inquiry." *Id.* at 359 (emphasis in original) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)).

We conclude that the district court applied the proper test to determine if WSU is an arm of the state excluded from liability under the FCA.

## B.     Whether WSU Is A "Person" Under The FCA

We have also not yet ruled on the issue of whether a public university, such as WSU, is a "person" under the FCA. Applying the same arm-of-the-state analysis, however, we have held that the University of Michigan and WSU's Board of Governors are arms of the state of Michigan for purposes of Eleventh Amendment immunity. *See Estate of Ritter v. Univ. of Mich.*,

851 F.2d 846, 849 (6th Cir. 2000) (University of Michigan is an arm of the state); *Komanicky v. Teachers Ins. & Annuity Ass'n*, 230 F.3d 1358 (6th Cir. 2000) (unpublished) (WSU's Board of Governors is an arm of the state). In addition, district courts in this Circuit have held that WSU is an arm of the state entitled to Eleventh Amendment immunity. *Johnson v. Wayne State Univ.*, No. 06-13636, 2006 W.L. 3446237, at *3 (E.D. Mich. Nov. 27, 2006) (WSU is an arm of the state entitled to Eleventh Amendment immunity); *Coleman v. Wayne State Univ.*, 664 F. Supp. 1082, 1085 (E.D. Mich. 1987) (same).

As discussed below, applying the four factors in *Ernst*, WSU is an arm of the State of Michigan, and therefore not a "person" subject to liability under the FCA.

### 1. Factor 1 – The State's Potential Liability For A Judgment

As the "foremost factor," the state's potential liability for judgment must be given substantial weight in our analysis. *Ernst*, 427 F.3d at 359 (citing *Hess*, 513 U.S. at 51). The district court found that this factor strongly supported its determination that WSU was an arm of the state because "any judgment against WSU will be paid out of the state's tax revenues" under Mich. Comp. Laws § 600.6095. R. 49 at 12. On appeal, Kreipke argues that the district court incorrectly interpreted this Michigan statute.

The Michigan legislature established WSU as a "state institution of higher education" that "shall be maintained by the state of Michigan" in Mich. Comp. Laws § 390.641. The Michigan Constitution provides that the "legislature shall appropriate monies to maintain . . . Wayne State University," Art. 8, § 4, and establishes that "the governors of Wayne State University and their successors in office shall constitute a body corporate known as the Board of Governors of Wayne State University." Mich. Const. Art. 8, § 5. Appropriations to WSU are received from the state's general fund pursuant to Mich. Comp. Laws § 390.649.

In *Ernst*, we concluded that the Michigan state judiciary's retirement system was a state agency entitled to Eleventh Amendment immunity in large part because the state was ultimately responsible for funding the retirement system, if for some reason the retirement system was unable to meet its obligations. 427 F.3d at 364. Summarizing our decision, we stated that "if a state's constitution and statutory law make the state responsible for funding" an entity, "that

reality makes the state potentially responsible for a judgment against it." *Id.* at 351–52. Here, the constitution and statutory law make the state of Michigan responsible for funding WSU. Those facts alone support a finding that the State of Michigan is potentially liable for a judgment against WSU.

In addition, Mich. Comp. Laws § 600.6095 states: "When any judgment or decree is obtained against any corporate body, or unincorporated board, now or hereafter having charge or control of any state institution, the amount thereof shall be included and collected in the state tax and paid to the person entitled thereto." The district court held that this provision requires the State of Michigan to pay any judgment against WSU. Kreipke argues that the district court was incorrect because § 600.6095 applies only to WSU's Board of Governors. Appellant's Brief at 21–25 (citing, *inter alia*, *Driver v. Naini*, 802 N.W.2d 311, 316 (Mich. 2011) (when the language of a statute is "clear and ambiguous," it must be applied as written under Michigan law)). WSU counters that, for purposes of the statute, WSU and its Board of Governors are one and the same.

WSU's Board of Governors is the corporate body responsible for managing WSU's affairs and property. Mich. Comp. Laws § 390.641. The parties do not dispute that § 600.6095 requires the state to collect in the state tax the amount of any judgment against the Board of Governors. Kreipke's argument that the state's payment obligation runs only to the Board of Governors, however, does not withstand scrutiny.

Under the statute establishing WSU and its Board of Governors, only the Board of Governors has the capacity to sue and be sued. Mich. Comp. Laws § 390.641. WSU argues that it is therefore not a proper defendant and any judgment in this case would effectively be against WSU's Board of Governors. Appellee's Brief at 18 n.5 (citing 14A C.J.S. § 51 (2008) (public universities cannot be sued absent express statutory authorization)). Based on the state law creating and governing WSU, it is reasonable to conclude that the state legislature did not include a provision stating that any judgment against WSU would be paid by the state—as the legislature did for WSU's Board of Governors—because the legislature did not endow WSU with the capacity to sue or be sued. In other words, there is no reason to pass legislation indemnifying a state institution against judgment, when that state institution is not susceptible to judgment. The statutory framework contemplates that any suit against WSU will be brought

against the corporate body responsible for its management: WSU's Board of Governors. Consequently, the state legislature provided that any judgment against the Board of Governors will be collected in (and paid out of) the state tax under Mich. Comp. Laws § 600.6095.

The State of Michigan is potentially liable for a judgment against WSU in this action. As required under *Ernst*, this factor weighs heavily in our analysis and creates a strong presumption that WSU is an arm of the state.

## 2.    Factor 2 – How State Statutes and State Courts Refer to the Entity

Under *Ernst*, the second factor includes four considerations: (1) how state statutes refer to the entity; (2) how state courts refer to the entity; (3) the degree of state control over the entity; and (4) the state's veto power over the entity's actions. 427 F.3d at 359.

Kreipke concedes that the first two considerations favor a finding that WSU is an arm of the State of Michigan. As discussed above, the state laws creating and governing WSU refer to it and treat it as a "state institution." Mich. Comp. Laws § 390.641. The caselaw also refers to WSU as a state entity. *See, e.g.*, *Littsey v. Bd. of Governors of WSU*, 310 N.W.2d 399, 402 (Mich. Ct. App. 1981) ("The Court of Claims has exclusive jurisdiction over claims against the state . . . [and] [t]his includes claims against a state university.").

As for the last two considerations, WSU concedes that the state does not have significant control over WSU or veto power over its actions. Kreipke argues that because the state lacks such control, the second factor requires a finding that WSU is not an arm of the state. In other words, Kreipke's position is that all four considerations under *Ernst* must be satisfied in order for the second factor to weigh in favor of finding WSU an arm of the state. This argument is not persuasive. The caselaw analyzing Eleventh Amendment immunity has not treated the *Ernst* factors, or the considerations relevant to any one of them, as a checklist that must be satisfied to establish immunity. Rather, the *Ernst* factors are weighed and balanced against each other based on the unique circumstances of the case. *See Perry v. Se. Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 472 (6th Cir. 2005) (describing the *Ernst* factors as a "balancing test"); *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 650–51 (6th Cir. 2013) (describing the *Ernst* factors as a "non-exhaustive list of factors to determine whether a particular entity is owed

sovereign immunity"). The only factor that gets special weight is the state's potential liability for judgment, which as we discussed earlier, creates a strong presumption that WSU is a state actor. *See Perry*, 154 F. App'x at 472.

Moreover, WSU's independence from state control is consistent with its status as a state educational institution. In *Branum v. Board of Regents of University of Michigan,* the Michigan court of appeals considered whether the state of Michigan's waiver of governmental immunity for torts also acted as a waiver of the same governmental immunity for the Board of Regents of the University of Michigan. 145 N.W.2d 860, 862 (Mich. Ct. App. 1966). The Board of Regents argued that it was not subject to the legislature's control, and therefore that the legislature's waiver on behalf of the state should not apply to it. *Id.* The court of appeals disagreed because the Board of Regents' independence was necessary to further the state's goals:

> This Court recognizes the wisdom of establishing a separate governing body of the University of Michigan, free from the political influences that are necessarily a part of a state legislature. This Court recognizes that such independence must be maintained in educational matters in order to provide the highest quality education for the students of Michigan, and in order to maintain the outstanding national reputation of the University. . . . In spite of its independence, the Board of Regents remains a part of the government of the state of Michigan.

*Id*. The same rationale explains why WSU's independence from the control of the Michigan state legislature should not undermine its status as a state entity in this case. The second factor thus also weighs in favor of finding WSU an arm of the State of Michigan.

### 3.    Factor 3 - Whether State or Local Officials Appoint Board Members

The third factor asks whether state or local officials appoint the members of WSU's Board of Governors. If state officials have appointment power, then this factor weighs in favor of finding that the entity is an arm of the state; whereas, if local officials have appointment power, then this factor weighs against an arm-of-the-state finding. *Cf. Ernst*, 427 F.3d at 360-61 (finding that the third factor supported finding that judicial retirements system was arm of the state where three of five board members were appointed by the state governor and the other two were state officials), and *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 331 (6th Cir. 2010) (finding third factor "weighs against a finding that [defendant] is an arm of the state" because its "officials are appointed at the local level").

Here, WSU's Board of Governors is elected through a statewide general election, with vacancies appointed by the Governor until a successor is nominated and elected.  *See* Mich. Const. Art. 8, § 5; Mich. Comp. Laws § 390.692.  Kreipke argues that the Governor's "limited" appointment power weighs against a finding that WSU is an arm of the state, while WSU argues that the fact that no local officials are involved in appointments supports an opposite finding.

This factor supports a finding that WSU is an arm of the state.  The fact that WSU's Board of Governors is elected through a statewide election underscores its character as a state, not local, institution.  The Governor's appointment power, even if limited, further supports a finding that WSU is an arm of the State of Michigan.

### 4.  Whether the Entity's Functions Fall Within the Traditional Purview of State or Local Government

Kreipke contends that WSU's function as a public university does not fall within the traditional purview of state government because WSU "began as a collection of city schools that were united by the Detroit Board of Education in 1933 as the 'Colleges of the City of Detroit.'" Appellant's Brief at 33 (citing Doc. 35 at PAGEID# 1588).  Kreipke argues that WSU's history makes this case analogous to *Kovats v. Rutgers*, 822 F.2d 1303 (3d Cir. 1987), where the Third Circuit held that Rutgers was not an arm of the state of New Jersey entitled to Eleventh Amendment immunity.

Kreipke's argument fails because there were other factors that weighed heavily against recognizing Rutgers as an arm of the state that are not present in this case, and all of the cases that we have reviewed hold that higher education is a function within the traditional purview of state government.  *See Hutsell v. Sayre*, 5 F.3d 996, 1002 (6th Cir. 1993)[2] (education is a "long-recognized governmental function"); *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 305 (6th Cir. 1984) ("Providing facilities and opportunities for the pursuit of higher education is a long-recognized governmental function."); *Ranyard v. Bd. of Regents*, 708 F.2d 1235, 1239 (7th

---

[2]Kreipke attempts to distinguish our decision in *Hutsell* because "its reliance for this position [that higher education is a governmental function] was founded entirely on other courts['] like positions, but which were focused entirely on individual states."  Appellant's Brief at 32.  Kreipke has not come forward with any authority, however, suggesting that Michigan's relationship to higher education is any different than the relationships between higher education and the states (Ohio and Illinois) referenced in the caselaw cited in *Hutsell*.

Cir. 1983) (noting that "few would dispute that stewardship over higher education performs an essential governmental function").

In *Rutgers*, two groups of faculty members brought an action under 42 U.S.C. § 1983 against Rutgers, its Board of Governors, and certain Rutgers officials relating to their employment at the university. 708 F.2d at 1306. The district court denied Rutgers' motion for summary judgment on the basis of Eleventh Amendment immunity, but certified its order for interlocutory appeal. *Id.* On appeal, the Third Circuit considered essentially the same factors that are before the Court in this case: the law and decisions defining the status and nature of the university in relation to the state; whether payment of a judgment against the university would be made out of the state treasury; whether the university was performing a governmental or proprietary function; the degree of autonomy that the university had over its operations; whether the university had the power to sue and be sued and enter into contracts; whether its property was immune from state taxation; and whether the state had immunized itself from responsibility for the agency's operations. *Id.* at 1307 (quoting *Urbano v. Bd. of Managers of the New Jersey State Prison*, 415 F.2d 247, 250–51 (3d Cir. 1969)). The Third Circuit recognized that "perhaps the most important" factor was the state's potential liability for a judgment against Rutgers. *Id.*

Regarding that "most important" factor, the Third Circuit found that "in the statute governing Rutgers, New Jersey has twice explicitly insulated itself from any liability on obligations running against Rutgers. . . . [Therefore,] [a]ny increase in Rutgers' state appropriation as a result of a judgment against Rutgers will be entirely the result of discretionary action by the state." *Id.* at 1309 (citing NJSA 18A:65-8, 65-25(e)). Regarding whether or not the university was performing a traditional state function, the Third Circuit found that Rutgers was distinguishable from entities that perform only proprietary functions because "[p]roviding education has long been recognized as a function of state government." *Id.* at 1310. Although the Third Circuit noted that Rutgers was once a private entity, its former status had an impact on its corporate character, rather than the issue of whether it was performing a traditional state function. *Id.* Rutgers, for example, retained the right to sue and be sued, as well as much of the autonomy that it had as a private university. *Id.* at 1311.

The Third Circuit held that the combination of the state's insulation from liability for a judgment against Rutgers (the "most important" factor), Rutgers' independent corporate status and retention of the right to sue and be sued, and Rutgers' autonomy outweighed its status as state entity under state law. *Id.* at 1312. As a result, Rutgers was not an arm of the State of New Jersey entitled to Eleventh Amendment immunity. *Id.*

There are significant differences between the Third Circuit's decision in *Rutgers* and the facts present in this case. Here, the state has not insulated itself from liability for judgments against WSU. As discussed above, the constitutional authority and statutes creating WSU did not endow it with the capacity to sue or be sued. WSU's Board of Governors is therefore the proper defendant in a lawsuit against WSU, and the state has expressly stated that a judgment against the Board of Governors will be paid from state tax revenue. *See* M.C.L. § 600.6095. Similar to Rutgers, WSU is largely independent from state control, but that factor alone does not compel a finding that WSU is not entitled to Eleventh Amendment immunity.

Kreipke also argues that WSU is not performing a traditional state function because only 20% of its funding comes from state appropriations. Appellant's Brief at 33-34. First, 20% of total funding can hardly be said to be only nominal state support for WSU. The materials cited by Kreipke for this number state that WSU's total "current funds revenue" for fiscal year 2012 was $895 million. R. 35-1 at PAGEID# 1665. Thus, the state of Michigan provided approximately $179 million to WSU from state appropriations for fiscal year 2012—no small sum, even if only 20% of its total funding. In any event, the level of funding received from the state is only marginally relevant, if at all, to the issue of whether WSU is performing a traditional state function. The question of whether a function is within the state's traditional purview is determined by analyzing whether the state has a history of performing or providing the same function or service. While this analysis may include funding considerations, the level of state funding should not be dispositive. In sum, by providing higher education, WSU is performing a function traditionally within the purview of state government.

All four of the factors to be considered under the *Ernst* test weigh in favor of finding that WSU is an arm of the State of Michigan. Accordingly, the district court correctly held that WSU

No. 15-1139                 *Kreipke v. Wayne State Univ.*                 Page 16

is an arm of the State of Michigan and therefore not a "person" subject to liability under the FCA.

### C.      Kreipke's Claim for Defamation Against WSU

Kreipke asserted a claim for defamation against WSU in Count VII of the First Amended Complaint.  After dismissing Kreipke's FCA claims, the district court dismissed the defamation claim on Eleventh Amendment immunity grounds.  R. 49 at 13 (citing *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012) ("The Eleventh Amendment to the U.S. Constitution grants immunity to states from litigation on state law claims in federal court.")).  As the dismissal of Kreipke's FCA claims was proper based on the same analysis that entitles WSU to Eleventh Amendment immunity, the district court was also correct in dismissing Kreipke's defamation claim as barred by the Eleventh Amendment.

### D.      Whether Kreipke Met the Standard For Pleading Fraud Under the FCA

Having affirmed the dismissal of all of the claims against WSU on immunity grounds under the FCA and the Eleventh Amendment, we will not consider WSU's argument that Kreipke failed to plead his conspiracy and "Reverse False Claim Act" claims with particularity under Fed. R. Civ. P. 9(b).

### E.      Whether WSU Is Subject To Liability As An "Employer" Under the FCA

For the first time on appeal, Kreipke argues that his retaliation claim under the FCA should not have been dismissed because, while WSU may not be a "person" under the FCA, WSU is an "employer" under the FCA that may still be sued for retaliation.  Appellant's Brief at 42–44.  As a general rule in this Circuit, arguments raised for the first time on appeal are forfeited.  *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006).  While we do have limited discretion to consider a forfeited argument, it is rarely exercised and Kreipke has not presented a compelling reason for us to do so here.

No. 15-1139               *Kreipke v. Wayne State Univ.*               Page 17

**F.    Whether The District Court Abused Its Discretion By Denying Leave To Amend**

In response to WSU's motion to dismiss, Kreipke requested leave to amend his complaint to add WSU's Board of Governors and its President as defendants, and, if required, to add specificity to his claims.  R. 35 at PAGEID# 1598-1600.  Because the district court did not rule on that request when it dismissed his complaint, Kreipke filed a motion to alter or amend the district court's judgment under Fed. R. Civ. P. 59(e) to permit him leave to amend.  The district court denied the Rule 59(e) motion on two grounds: (1) Kreipke failed to file a formal motion requesting leave to amend; and (2) the proposed amendments were futile in light of its holding that WSU was not a "person" under the FCA and was entitled to immunity under the Eleventh Amendment.

A district court's denial of leave to amend and denial of a Rule 59(e) motion are both reviewed for abuse of discretion.  *See Leary v. Daeschner*, 349 F.3d 888, 904 (6th Cir. 2003) (denial of leave to amend reviewed for abuse of discretion); *Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 727–28 (6th Cir. 2012) (denial of motion to alter or amend judgment under Rule 59(e) reviewed for abuse of discretion).  As Kreipke's proposed amendment would have been futile, this Court need not decide whether the district court abused its discretion in denying leave to amend based on Kreipke's failure to file a formal motion.

A proposed amendment is futile where it would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  However, "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."  *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)).

Kreipke argues that his proposed amendment would not have been futile because it alleges viable causes of action against WSU's Board of Governors and its President.  In the proposed amended complaint, Kreipke asserts the same FCA claims against WSU's Board of Governors that he asserted against WSU in the First Amended Complaint.  Kreipke asserts only one claim against WSU's President: a claim for defamation under Michigan law.  For the reasons discussed below, none of Kreipke's claims against WSU's Board of Governors and its President would survive a Rule 12(b)(6) motion to dismiss.

Kreipke argues that his proposed FCA claims against WSU's Board of Governors are not futile because, unlike WSU, the Board of Governors is a corporation and corporations are included within the definition of a "person" under the FCA.  Appellant's Brief at 49–51 (citing *Stevens*, 529 U.S. at 782).  In *Stevens*, the Supreme Court held that states and state agencies are excluded from the definition of a "person" under the FCA. 529 U.S. at 788.  In making that determination, the Supreme Court noted that "persons" are presumed to include corporations under 1 U.S.C. § 1, but there is no applicable statute declaring that "persons" should also include states.  *Id.* at 782.  The Supreme Court made this observation to support its construction of the statute to exclude states and state agencies, not to support a holding that all corporations, regardless of their affiliation with a state, are subject to liability under the FCA.

Nonetheless, Kreipke asserts that the Supreme Court's statement regarding corporations should be read expansively to mean that all corporations are subject to liability under the FCA, regardless of their affiliation with a sovereign state. Kreipke fails to cite any authority for that proposition.  Indeed, the only reasonable reading of the Supreme Court's holding in *Stevens* is that corporations are included within the definition of "persons" under the FCA, but corporations that are arms of the state are excluded.  *See Stevens*, 529 U.S. at 779 (a state must clearly express an intent to permit causes of action against itself).  Kreipke's assertion that the Board of Governors is liable as a "corporation" under the FCA, despite its status as an arm of the state, is rejected.

Kreipke argues that his proposed defamation claim against WSU's President would be viable because the President is not entitled to immunity under Michigan law.  Appellant's Brief at 53-54.  Kreipke asserts that his defamation claim alleges an intentional tort, and that, under

No. 15-1139                *Kreipke v. Wayne State Univ.*                Page 19

Michigan's Government Tort Liability Act ("GTLA"), WSU's President is not immune from liability for intentional torts because he is not "a judge, a legislator, or the highest-ranking appointed executive official at any level of government." *Id.* at 53 (quoting *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008)).

In *Odom*, the Michigan Supreme Court interpreted the GTLA and specifically the subsections providing individual governmental actors with immunity from tort liability. It held that the GTLA confers "absolute immunity to high ranking officials" under Mich. Comp. Laws § 691.1407(5), which states:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

760 N.W.2d at 222. Kreipke is correct that WSU's President is not entitled to immunity under this subsection, as he is not a judge or legislator and was neither elected nor appointed by a governmental body.

Lower-level governmental actors, however, are provided qualified immunity from tort liability under Subsection 2 of the GTLA, which states:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> > (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
> >
> > (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> >
> > (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Mich. Comp. Laws § 691.1407(2). In *Odom*, the Michigan Supreme Court held that the immunity provided in this subsection "encompasses only *negligent* tort liability" because the GTLA expressly preserves "the law of *intentional* torts as it existed before July 7, 1986." 760 N.W.2d at 222 (emphasis added) (quoting Mich. Comp. Laws § 691.1407(3)). As previously noted, Kreipke alleges the intentional tort of defamation against WSU's President; consequently, WSU's President is not entitled to immunity under this subsection of the GTLA, which protects governmental actors against only negligent tort liability.

The test for determining governmental actors' liability for intentional torts, as it existed under Michigan law before July 7, 1986, is set forth in *Ross v. Consumers Power Co.*, 363 N.W.2d 641 (Mich. 1984). *See Odom*, 760 N.W.2d at 224. Under that test, a governmental actor establishes immunity by showing:

> (1) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (2) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (3) the acts were discretionary, as opposed to ministerial.

*Id.* at 228. The Michigan Supreme Court defined a lack of good faith, under the second element, as "malicious intent, capricious action or corrupt conduct" or "willful and corrupt misconduct." *Id.* (quoting *Veldman v. Grand Rapids*, 265 N.W. 790, 794 (Mich. 1936); *Amperse v. Winslow*, 42 N.W. 823, 827 (Mich. 1889)). "Willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id.* (quoting *Burnett v. City of Adrian*, 326 N.W.2d 810, 812 (Mich. 1982)). Under the third element, whether the acts were discretionary or ministerial, the Michigan Supreme Court stated that ministerial acts "constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice." *Id.* at 226 (quoting *Ross*, 363 N.W.2d at 668). Discretionary acts, on the other hand, "require personal deliberation, decision and judgment." *Id.* (quoting *Ross*, 363 N.W.2d at 668).

Entitlement to immunity under the *Ross* test is an affirmative defense that must be proven by the governmental actor. *Id.* at 228. Where an affirmative defense appears "clearly on the face

No. 15-1139          *Kreipke v. Wayne State Univ.*          Page 21

of the complaint," however, a court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim. *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 73 (S.D. Ohio 1986) (citing *McNally v. Am. States Ins. Co.*, 382 F.2d 748 (6th Cir. 1967)).

Applying the *Ross* test to the allegations in Kreipke's proposed amended complaint, WSU's President is entitled to immunity. As to the first element, WSU's President was acting within the scope of his employment when he authored the allegedly defamatory commentary published in the Detroit Free Press. In the commentary, he is clearly speaking on behalf of WSU, as he addresses Kreipke's claims against WSU and repeatedly uses the pronoun "we" to refer to WSU. R. 19-5 at PAGEID# 1389. As to the second element, there are no facts alleged in the proposed amended complaint from which it could be inferred that WSU's President acted with a malicious intent to harm Kreipke. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) ("'[N]aked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint.") (quoting *Iqbal*, 556 U.S. at 678). As to the third element, nothing in the proposed amended complaint suggests that WSU's President was performing a ministerial act. To the contrary, authoring the article required "personal deliberation, decision and judgment" consistent with a discretionary act. *Odom*, 326 N.W.2d at 226. As all three elements of the *Ross* test are satisfied, WSU's President was entitled to immunity from Kreipke's defamation claim under Michigan law.

We conclude that the district court properly denied Kreipke's request to amend the complaint as futile.

## IV.   CONCLUSION

The judgment of the district court is **AFFIRMED**.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 15-1139

CHRISTIAN KREIPKE,

             Plaintiff - Appellant,

    v.

WAYNE STATE UNIVERSITY,

             Defendant - Appellee.

```
┌─────────────────────────────┐
│          FILED              │
│        Dec 04, 2015         │
│    DEBORAH S. HUNT, Clerk   │
└─────────────────────────────┘
```

Before: ROGERS and DONALD, Circuit Judges; ROSE, District Judge.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____

Deborah S. Hunt, Clerk